In the Matter of Louis J. Caligiuri, Petitioner, against Jule L. Maisel et al., Respondents.

In the Matter of Louis J. Caligiuri, Petitioner, against Jessie Maisel et al., Respondents.

Supreme Court, Special Term, Kings County, August 3, 1950.

*George Rosling* for petitioner.

*Jule L. Maisel,* respondent in person, and for others, respondents.

*John P. McGrath, Corporation Counsel (Beatrice Dunn* of counsel) for Board of Elections of the City of New York, respondent.

POWERS, J.   These proceedings, which have been consolidated, were brought pursuant to sections 332 and 137 of the Election Law to cancel the enrollment of the respondents Jule L. Maisel and his wife, Jessie Maisel, as members of the Democratic Party of the Sixth Assembly District, Thirty-sixth Election District, and also to invalidate the petition designating the respondent Jule L. Maisel as candidate for the party position as member of the State committee.

The records show that the respondent Jule L. Maisel and his wife appeared before the board of elections of the city of New York, central registration, on August 9 and 11, 1949, respectively, for the purpose of enrollment and at those times stated that they resided at No. 868 Lafayette Avenue, Brooklyn, New York.   Thereafter and on April 11 and 20, 1950, the respondents had their enrollments transferred for the reason that they claimed that they had moved from Lafayette Avenue to No. 365 Clinton Avenue, Brooklyn.

At the trial the respondent Jule L. Maisel testified that in the year 1943, he resided at No. 957 Greene Avenue, Brooklyn, New York, and in the latter part of that year he moved to No.

868 Lafayette Avenue. He testified further that he continuously resided and maintained his home at that address until November, 1949, when he entered into a lease for a 3½-room apartment at the Clinton Avenue address.

According to the respondent Jule L. Maisel's testimony, premises No. 868 Lafayette Avenue contain approximately seventeen rooms, two of which are kitchens and two are bathrooms. When the respondents allegedly moved into one of the rooms of these premises three families were already living there. Respondent's testimony also is that the four families continued to live in the premises as one large family.

I do not believe Mr. Maisel's testimony. This respondent admitted on the stand that he continued to maintain the three-room apartment, one of the rooms being a bedroom at No. 957 Greene Avenue from 1943 to 1945, but states that he merely used these premises as an office for political purposes despite the fact that there was an extreme housing shortage existing at the time. It also appears that the respondent, as a district leader, had political headquarters with at least four rooms in the immediate neighborhood of the Greene Avenue address and that one of these rooms was used by him as a private office. Respondent also maintained a separate law office at the time. Under these circumstances it seems strange indeed that the respondent would use the apartment on Greene Avenue as a political office and not use the same for living quarters, particularly so when according to his own testimony he was cramped up with three other families at the Lafayette Avenue premises.

The evidence also shows that in January, 1945, respondents bought a house at No. 256 Beach One Hundred and Thirty-first Street, Belle Harbor, Rockaway Beach, New York. In the acknowledgment annexed to the mortgage covering this property the respondent Jessie Maisel swore that she was living at No. 957 Greene Avenue, and not No. 868 Lafayette Avenue. This sworn acknowledgment directly contradicts respondent's testimony that he was then living at the Lafayette Avenue address. It is also to be observed that the respondent acted as his own lawyer in this transaction and consequently he must have known that his wife was giving No. 957 Greene Avenue as her home address at the time. I think the true explanation of these facts is that the assembly districts in Brooklyn and throughout the State of New York were being reapportioned about this time and according to the new lines the apartment on Greene Avenue probably would be outside of the Sixth Assembly District where

the respondent was the State committeeman.  In an effort to continue his political activities in the Sixth Assembly District, respondent sought to change his voting residence so that he would be in the new Sixth Assembly District.  He voted from this address from 1943 to 1949.  It was for this purpose, therefore, that he changed his voting address to the house on Lafayette Avenue without actually moving into that house.  I am of the opinion that the respondents did not change their domicile at that time.

After the respondents bought the house in Belle Harbor in 1945, they admittedly moved the bulk of their furniture to that address.  There they occupied one room and a porch, and stored most of their furniture in the cellar of those premises.  The respondent Jule L. Maisel testified that he only stayed at Belle Harbor during the summer months, but this testimony was directly contradicted by one of the tenants in these premises who stated that the respondents lived there during the summers and also during one winter.

Respondent Jule L. Maisel asserts further that at various times he lived at other places which he did not maintain as a domicile, namely, the Park Crescent Hotel, and also an apartment at No. 205 West Fifty-fourth Street, in the borough of Manhattan.  Respondent also testified that he made three trips to Europe, one in 1945, one in 1946 and one in 1948.

Petitioner, however, established that the respondents entered into a lease in the name of Sanger and the respondent, Jule L. Maisel, for Apartment 7C, at No. 205 West Fifty-fourth Street, for a term to commence on October 1, 1947, and to expire on September 30, 1949, with automatic renewals for a term of one year thereafter, unless cancellation was had by either party by written notice given to the other.  The respondents did request an extension of the lease, but by letter dated November 4, 1949, the landlord indicated its unwillingness to extend the lease by written agreement.

This apartment at No. 205 West Fifty-fourth Street consisted of three rooms, one of which was a bedroom.  At these premises the parties were known under the unmarried name of the respondent Jessie Maisel, namely the surname of Gebelow. There they received mail and parcels under the name of Gebelow and arranged for repairs to the apartment, and the respondent Jule L. Maisel had a telephone installed in the premises in his name without any listing.  The electric current and gas was supplied to the premises by the Consolidated Edison Company,

and bills were rendered to and paid by the respondents. From October 1, 1947, to as late as January, 1950, both respondents frequently were seen coming in and going out of the apartment at various times, particularly in the morning and at night. They were also seen carrying up packages and parcels of food on many occasions during the above-mentioned period. Respondents also had their clothes cleaned and pressed at a cleaning establishment in the immediate vicinity of the Fifty-fourth Street apartment on numerous occasions, such articles of wearing apparel being left with the cleaner under the name of Gebelow.

A number of witnesses called by the petitioner who lived in the immediate neighborhood of the respondents' claimed residence at No. 868 Lafayette Avenue testified that they had not seen the respondents in that neighborhood for five to six years prior to 1950. They also testified the respondents told them in the early part of 1950 that they had just moved back into the district and that they intended renewing their political activities. Another witness, the mailman who had been delivering mail to the Lafayette Avenue premises for five days a week for the last year and a half, also testified that he had never seen the respondent Jule L. Maisel there.

While an effort was made by the respondent Jule L. Maisel to show that Mr. Sanger also occupied the apartment at West Fifty-fourth Street with the respondents and shared expenses, Mr. Sanger was never produced in court to substantiate this version of the respondent's testimony. The evidence is undisputed that Mr. Sanger maintained a separate residence at No. 7 West Eighty-first Street, in the borough of Manhattan, and that he did not at any time live at West Fifty-fourth Street.

The respondent Jule L. Maisel also attempted to show that this apartment was maintained by him for the purpose of providing living accommodations for people from abroad and for business associates. No evidence was submitted to corroborate this testimony but, on the contrary, the vice-president of the landlord corporation stated that he had no knowledge that any such state of facts existed and if it were true he would have known about it.

It might also be pointed out that most of the witnesses who were employees of the landlord at the West Fifty-fourth Street address were obviously hostile to the petitioner, and while they gave more than sufficient evidence to substantiate the petitioner's contentions they did so in an effort to make their testimony as favorable to the respondents as possible.

All these facts plainly indicate beyond any doubt that the respondents were in fact domiciled at No. 205 West Fifty-fourth Street in August, 1949, when they stated to the board of elections that they then resided at the Lafayette Avenue address. In my opinion, respondents used the name Gebelow, as indicated above, in a studied attempt to disguise their actual domicile.

Respondent's sisters and brothers-in-law sought to corroborate the respondent Jule L. Maisel's testimony that he lived at the Lafayette Avenue premises. They all testified that they lived there as one large family, and one would naturally suppose that with such a harmonious and congenial relationship existing, these witnesses would have had fairly good knowledge of the activities of each member of the family. On cross-examination, however, all members of the respondents' family were unable to relate the number of times and the dates when the respondent Jule L. Maisel was in Europe, and most of them were unable to state where the respondents spent their nights when they were allegedly consistently absent from the Lafayette Avenue premises. Although the respondent maintained a telephone at the West Fifty-fourth Street apartment, only one of the sisters knew the respondents' telephone number. It is not only what these members of respondents' family said, but also what they did not say, and their manner of testifying, that leads me to the conclusion that all of them willfully and deliberately lied in an effort to defeat the petition.

The respondent Jule L. Maisel also testified that he attended the Men's Club in the neighborhood of the Lafayette Avenue address on Monday nights and that on these occasions he met many of his friends. If this were true it would seem to me that the respondent should have been able to call some witnesses to establish this fact other than his political associate, George Sutter, and his brother-in-law, Sam Wolf. So far as Sutter's testimony is concerned, it is unworthy of belief, for the reason that he was very vague as to the number of rooms in the Lafayette Avenue house and as to the number of families residing there.

It is to be noted that the respondents did not produce one single disinterested witness other than Sutter to support their testimony that they lived at the Lafayette Avenue house during the years 1943 to 1949. No neighbors, shopkeepers or tradespeople were brought in to show that they had been seen in the neighborhood at any time during those years. I am convinced

that if the respondents were telling the truth, they could have called at least a few such witnesses to substantiate their story.

It is also significant that the respondent Jessie L. Maisel did not take the stand to deny the allegations of the petition and, further, that no excuse was offered for her failure to testify.

As was pointed out in *Matter of Scarfone* v. *Ruggieri* (197 Misc. 1007, 1010, affd. 277 App. Div. 931 [2d Dept.], affd. 301 N. Y. 662): "The law is clear that a person may select and make his own domicile but such selection must be followed by proper action, motives being immaterial except as they indicate intent but no pretense or deception can be practiced, for the intention must be honest, the action genuine and the evidence to establish both clear and convincing. Residence and domicile have been held to be synonymous under our Election Law and domicile means living in a place with an intent to make it a fixed and permanent abode as contrasted with residence which simply requires bodily presence as an inhabitant. To acquire a domicile there must be a present, definite and honest intent to give up the old and take up the new place as a domicile. The question of domicile is one of fact."

In the light of the foregoing, I find as a fact that the respondents were not domiciled at No. 868 Lafayette Avenue, Brooklyn, New York, but were domiciled at No. 205 West Fifty-fourth Street, New York City; that their declared residence in the enrollment in 1949 in the Twenty-fourth Election District of the Sixth Assembly District as a member of the Democratic party was false and made for the purpose of deception and to gain whatever personal advantages they could derive therefrom by registering as enrolled voters at such address. Having perpetrated a fraud, respondents may not benefit therefrom and, as a result thereof, participate in the activities of the Democratic party of the Sixth Assembly District.

The evidence justifies the granting of the relief requested in the petition (*Matter of Scarfone* v. *Ruggieri, supra*). Submit order in accordance with the foregoing.