THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* BLAS
GONZALEZ, Appellant.

Argued May 22, 1944; decided July 19, 1944.

*John McKim Minton, Jr.,* and *Rudolph Stand* for appellant.
The trial court's refusal to answer the jury's question during
its deliberation constituted serious, prejudicial error. (Code
Crim. Pro., § 427; *People* v. *Flynn,* 290 N. Y. 220; *People* v.
*Cooke,* 292 N. Y. 185; *People* v. *Bonier,* 179 N. Y. 315; Wharton
on Homicide, 3rd ed., 225; 26 Am. Jur., Homicide, § 304; *Dukes*
v. *State,* 14 Fla. 499; *People* v. *Sanducci,* 195 N. Y. 361; *Stokes*
v. *People of the State of N. Y.,* 53 N. Y. 164.)

*Frank S. Hogan, District Attorney (Whitman Knapp, Richard G. Denzer* and *Alan J. Elliot* of counsel), for respondent. The trial judge's answer to the jury's question was proper. (*People* v. *Cooke,* 292 N. Y. 185.)

DESMOND, J.   On the evening of March 13, 1943, a young man named Allen Parris was shot as he stood on the stoop or in the doorway of a house on 63rd Street in Manhattan. Later that evening he died from the bullet wound. On the evidence, including defendant's own statements to a police officer and to an Assistant District Attorney, the jury was justified in finding that the shot was fired by defendant and that each of the elements of the crime of murder in the first degree was proven beyond a reasonable doubt. On the preceding evening there had been altercations in a candy store and later in the street nearby, between a group of young men which included Parris and another group which included Victor Gonzalez, the son of defendant. On those occasions the quarrelling, according to one version, arose from an insult offered by one of the Parris group to Victor's sister. Other witnesses said that the feuding was touched off by some discussion about the jackets Victor Gonzalez and his friends were wearing, or by an effort by one of the Parris group to steal one of those jackets. At any rate, Victor went home and reported the occurrences to his father, the defendant here. When the trouble flared up again the next night, defendant was a participant. In his statements made after the shooting, he said that, after some skirmishing between the two bands of young men, he (defendant) heard one of the Parris group make a threat to " get him and take care of him " without specifying who it was who was to be taken care of. Defendant, according to his statements to the investigators, then went home and got his revolver, joined with his son's friends in chasing the other youths and fired the shot that ended the life of Parris.

Defendant's counsel, in his closing address to the jury, argued that it had not been clearly proven that defendant fired the shot, and that defendant, if he did shoot Parris, did so for the protection of his son and daughter. The prosecutor in his summation took up the several ingredients of the crime of murder in the first degree. At one point he said to the jury: " There is your premeditation; that going to get the gun and

coming back." Those words are of special importance in the light of what occurred after the jury had retired to deliberate.

The Judge charged the jury on all the phases of the case and the jurors went out to consider their verdict. Three hours later they returned to the courtroom and the following colloquy was recorded: " The Clerk: Mr. Foreman, please rise. Gentlemen of the Jury, have you agreed upon a verdict. The Foreman: Not yet. The Court: Mr. Foreman and gentlemen of the jury: a few minutes ago I received the following communication: ' Your Honor: If a man put a gun in his pocket for protective purposes originally, and subsequently used it in the commission of a crime, would that constitute premeditation? ' Signed ' Harold Derfner,' Foreman. My answer: I am unable to answer your question in that form, except as already given in my original charge. If you care to have any portion of such charge read, indicate it and I will have it read. You may retire. Did you hear what I said? The Foreman: Yes, sir."

Two and a half hours later the jury returned with its verdict of guilty of murder in the first degree.

We consider that the court's response to the jurors' question was no less than a refusal to reinstruct them as to an applicable proposition of law, a refusal to clarify their doubts. Their question, while not framed in language of the utmost possible clarity, was intelligible and, even if it were not, it was the court's duty to ask the questioners to make their inquiry clearer. That there was a binding duty to answer the question cannot be doubted. Section 427 of the Code of Criminal Procedure says in part: " After the jury have retired for deliberation, * * * if they desire to be informed of a point of law arising in the cause, they must require the officer to conduct them into court. Upon their being brought into court, the information required must be given * * * ". Of that section, which first appeared in the Criminal Code as adopted in 1881 (L. 1881, ch. 442), there has been little or no mention in the decisions until quite recently (such cases as *People* v. *Parker,* 137 N. Y. 535, and *People* v. *Silver,* 234 App. Div. 871, deal rather with another part of the section, not above quoted, which requires that the added instructions be given in defendant's presence and after notice to his attorney). Recently, however, we have had to consider the statute in three cases, including this one. In *People* v.

*Flynn* (290 N. Y. 220) we held it to be grave error for the court to refuse to answer categorically a question from the jury which had the effect of insinuating into the case a theory of felony murder, which was not properly before the jury. In *People* v. *Cooke* (292 N. Y. 185) we were confronted with a situation where the court did proffer an answer to the question. This court, in the *Cooke* case, divided on the point of whether or not the additional instructions so given were correct and sufficient. None of us expressed any disagreement with so much of the Chief Judge's dissenting opinion, in that case, as says that section 427 of the Code of Criminal Procedure leaves to the trial court no discretion whatever as to whether or not to answer a proper question from the jury, even though the original charge contains a correct answer to that same question. In *People* v. *Cooke* the whole court agreed, I think, on these propositions: first, that a trial judge simply cannot refuse to answer a pertinent question from the jury; second, that the answer need not necessarily be a categorical " yes " or " no "; and third, that if to a proper question the court gives no answer at all or an answer that fails to answer, then the error is reversible.

The right of jurors to " ask questions of the judges for their direction " is no new thing. (Chitty, Practical Treatise on the Criminal Law, vol. 1 [1819], p. 517; see *Maurer* v. *The People,* 43 N. Y. 1.) The general rule in the United States is that " the court may and ordinarily should give the jurors additional instructions on their request " (23 C. J. S. Criminal Law, § 1376, subd. c., p. 1046). In Pennsylvania, without the guidance of any statute, the Supreme Court said: " In fact, the practice of giving additional instructions to the jury upon their request is so well settled in this state that we know of no prior instance in which the request has been refused " (*Commonwealth* v. *Smith,* 221 Penn. St. 552, 555). Using language that we adopt here, the Pennsylvania Court went on to say: " It is immaterial that the court has already charged the jury upon the law of the case generally, or has given instructions which would answer the request of the jury. The very fact that the jury, after having been in consultation, have failed to comprehend the instructions given in the charge and request further instructions, is of itself sufficient to show the necessity of addi-

tional instructions. As we said above, if the jury do not understand the instructions, or are ignorant or uncertain as to the law applicable to any part of the case, the charge is inadequate and fails of its purpose, which is to advise the jury fully and clearly upon the law applicable to each and every part of the case." That clear statement disposes of the contention made in the present case that the court dealt adequately with the submitted question when he offered to read to the jury any desired part of his original charge.

The Legislature of this State has in section 427 made positive and absolute the requirement that " the information required must be given ". The answering of such questions is no mere matter of conventional procedure. It is an integral part of the structure of an adequate trial. We differed as to other matters in *People* v. *Cooke* (*supra,* p. 193) but we find no reason for disagreeing with the Chief Judge's statement in that case that " the court must give the information requested, and where the court fails to give information requested upon a vital point no appellate court may disregard the error under section 542 of the Code of Criminal Procedure."

It follows that the judgment of conviction should be reversed and a new trial ordered.

CONWAY, J. (concurring in result). I concur in the result arrived at in the opinion of DESMOND, J. After deliberating for some hours, the jurors returned to the court room and asked: " If a man put a gun in his pocket for protective purposes originally, and subsequently used it in the commission of a crime, would that constitute premeditation? ". To that, the Trial Judge replied: " I am unable to answer your question in that form, except as already given in my original charge. If you care to have any portion of such charge read, indicate it and I will have it read. You may retire."

A reading of the charge of the court shows that it contained no answer to the question posed.

LEHMAN, Ch. J., LOUGHRAN, RIPPEY, LEWIS and THACHER, JJ., concur with DESMOND, J.; CONWAY, J., concurs in result in separate opinion.

Judgment of conviction reversed, etc.