Patrick J. Cunningham, J.
Defendant was charged in Town Court, Town of Onondaga by information with two charges *812 both misdemeanors. The first was prohibited use of a weapon in violation of section 265.35 (subd. 4, par. [a]) of the Penal Law. The second count was a violation of section 353 of the Agricultural and Markets Law. The information charged that the misdemeanors were done intentionally, knowingly and unlawfully.
FACTS
On October 3, 1973 at 1:00 p.m. Donna Satanek left her home at 4182 St. John Drive with the family dog, a seven-year-old male Golden Labrador owned by her father Richard Satanek. Beau Gueste was allowed to run in an open field. Some time later, about 2:00 p.m., she returned home past the home of Paul V. Wicker, Jr., the defendant, and observed the dog dead under a sheet in the gutter in front of the Wicker home. The dog was variously described as being a large dog about 100-125 pounds in weight and three feet high.
The dog was first observed by the defendant at the rear of his property. At the time there were six adults and at least six small children present in the immediate vicinity. The Satanek dog came running at full speed and without apparent provocation attacked the Wicker dog who had crawled under a picnic table in the back yard. The Wicker dog, Sam, was described as a small beagle about 13 inches high. Someone had called out “ Look out! here comes Beau ” and the children were removed from the area with a good deal of confusion and screaming. Richard Baranello a neighbor present and the defendant went into their homes. Baranello emerged with an air pistol and Wicker with a 12-gauge shotgun. Beau Gueste was observed on top of Sam engaged in a fight. Blood was observed on both dogs. There were no children in the area or near the dog fight.
Defendant loaded his shotgun with one slug and fired it at the larger dog fatally wounding it. The Wicker dog underneath sustained gashes on its back and cuts. It needed no veterinary care. Further evidence disclosed that the Satanek dog had never bitten anyone but had had at least four incidents involving other dogs of which defendant was aware and that Chris Wicker, his infant daughter, was seriously bitten and scarred by a dog three years prior to the incident.
It is incumbent upon the People to prove beyond a reasonable doubt that the actions of the defendant were done in a public place and also willfully. The proof is uncontroverted that the killing: of the dog occurred on defendant’s property. It was *813 in front of Ms house, on the driveway about 6 to 8 feet from the attached garage. One shot was fired from 30 feet which lodged near the house in the asphalt after killing the Satanek dog.
The key to the charge in the opinion of the court is whether or not a person’s own home and residence can be considered a public place. There is no clear cut definition and a dearth of precedent in the law which allows us to establish this fact. This area of the law is very nebulous for such a commonly used legal term. Webster’s dictionary defines the word public as “ belonging to or concerning the people as a whole, and private as belonging to oneself not public ”. Even though an act was committed in a place near to, and in open view of the public this cannot transform what is privately owned and personal into a public place. A man’s home is his castle and he has special privileges in connection with acts occurring on what is peculiarly his and no one elses.
The Court of Appeals case of Madison Prods. Co. v. Coler (242 N. Y. 467) states in unequivocal language that a public place is open to the public with no limitation and a private place is not open to unrestricted use of the public and is under private control. I have reviewed at length the cases and law which deal with public order such as harassment, public intoxication and loitering and feel that they are not in conflict with but supportive of the aforesaid, in that to be public there must be some area under which. the general public could be present without limitation.
Having found on the first count that the People have failed in their proof to show that the actions were done in a public place it is unnecessary to determine whether or not the act of shooting was done willfully.
The second charge presents more of a problem in the misdemeanor charge of cruelty to animals in. violation of section 353 of the Agricultural and Markets Lav/, This court believes that tMs is the more appropriate of the charges considering the facts of the instant case. Again we must refer to the accusatory instrument which requires intentional, unlawful and knowing acts resulting in the unjust killing of an animal. When the charge is weighed in the light of the acts of this defendant the court feels the proof falls short of sustaining their burden of proof. The ease law is of little help in rendering the decision as it rests squarely on the facts and whether or not the conduct of the defendant was reasonable under the circumstances and justified. The court has considered the size of the dog, its prior *814 acts which weighed upon the defendant’s state of mind, the prior dog bite of Chris Wicker, in assessing the state of mind of the defendant when the shot was fired killing the Satanek animal.
It is the feeling of the court that the facts proved during the trial together with the manner of the dog Beau G-ueste’s unprovoked . attack justified the defendant’s securing his 12-gauge shotgun from his home. The dog appeared at a dead run completely disrupting the small children in the area who scurried for safety as the Satanek dog went after the smaller Wicker dog. The neighbor Richard Baranello with small children of his own present, also secured an air gun with the expressed intention of shooting the Satanek dog, as he emerged from his house toward the dog fight which had generated to the front yard with the Satanek dog on top of the Wicker dog. It was in this setting that the defendant fired his gun and killed the Satanek dog. The court feels his actions at this particular instance were justified both from a safety standpoint and to protect his dog from an unprovoked attack on his own property.
The prosecution argues strenuously that the defendant should have taken some other course of action such as frightening the dog away or securing a stick or bucket of water. This court does not feel that such action was necessary in view of the background of the particular facts in this case. It was not the time which would so require a well thought out studied resolution of the problem. Defendant did not have to place his own safety or well-being in jeopardy. The defendant having justifiably secured his firearm at a point with the fight still going on and the same danger there present the court feels he acted in a reasonable manner in dispatching the dog. We agree with the prosecution that there is no right to kill or injure a trespassing dog and that a dog is not a domestic animal. The facts here however justify the use of a defensive force which unfortunately in this case was the discharge of the firearm. The fact of ultimate damage to the defendant’s property is of absolutely no moment in consideration of justification but rather state of mind.
The court has reviewed in its entirety section 16-2 of the ordinances of the Town of Onondaga. The statute which the court finds constitutional and in effect. It prohibits the discharging of firearms in this particular designated area of the town as shown on the town map, as revised August 4,1971. This statute is much less restrictive than the laws we considered before.. It allows discharge of firearms by a defendant simply when it is necessary to protect his property. The facts are *815 uncontroverted in this case and disclose that the defendant clearly was attempting to, at least, protect his property when he discharged the firearm.
In view of the absence of proof beyond a reasonable doubt the reasons set forth herein the court finds the defendant Paul V. Wicker, Jr. not guilty of all the charges against him arising from the shooting of the dog Beau Gueste on September 23,1973.