Arthur Hirsch, J.
Defendant was tried by the court without a jury on the criminal charge of possession of a weapon as a felony. During the course of the trial it was admitted by the defendant that he did, in fact, possess a firearm and that the firearm was loaded and operable at the time it was seized by the police. The only question remaining for this court to decide is whether the illegal possession took place in the defendant’s "home” for if it did the statute provides that the crime is a misdemeanor rather than a felony.
The record in the instant matter indicates that the defendant spent at least as much time at the abode where the gun was found as he did at the other abode where he stayed at times. In addition, defendant had a strong social connection with the lady at the address where the gun was found and while he claimed that he ate all of his meals there, the testimony at the very least reveals that he ate many of his meals there. Not only did he maintain significant attachments at the place which is the scene of the crime, but it is not difficult to assume that he had more concern with his safety and the safety and well-being of the individuals at this location than he had when he remained in his other home.
The question of the definition of a "home” under the statute is a complex one. The Penal Law itself gives little aid, because under section 10.00, "Definitions of terms of general use in this chapter”, the definition of a "home” is not included. Nor under the specific section dealing with possession of weapons is there a definition of "home”. Thus, the court is compelled to turn to another field of law where the question of residence is of vital importance, i.e., the Election Law. It is well established statutorily that in order to hold elective office an individual must be a "resident of the political subdivision of the state for which he shall be chosen.” The Election Law specifically spells out the definition of "residence” in section 151 where it is stated: "As used in this article, the word 'residence’ shall be deemed to mean that place where a person maintains a fixed, permanent and principal home and to which he, wherever temporarily located, always intends to return.” There can be no doubt that the Legislature was definite and strict in its definition of "residence” since, as stated, a proper residence is in fact a vital prerequisite to qualify to run for particular office in a certain area. In dealing *973 with this statutory definition of "residence”, however, the courts have expanded the concept to a large degree. Thus, in Matter of Gallagher v Dinkins (41 AD2d 946) the court stated: "There is no rule which prohibits a candidate for public office from having two residences; and, where the record is clear, as at bar, that both residences are places where he maintains signiñeant and legitimate attachments (emphasis added), it is for him to decide which address he considers as his voting address.”
In Matter of Gladwin v Power (21 AD2d 665, affd 14 NY2d 771) the Appellate Division dismissed a petition to invalidate a candidate’s qualification to run for public office. In the course of its decision the court stated that a residence can be a place where an individual "maintains a physical arrangement for living and uses such arrangement both for occasional living and as an office.”
Judge Simon's dissent in the case of Matter of Bressler v Holt-Harris (37 AD2d 898, affd 30 NY2d 529) shows specifically the extent to which the courts have gone in dealing with the concept of residence in a liberal fashion. Judge Simon pointed out that the court in its majority opinion had allowed a candidate to claim as a residence a one-room walk-up with bath in which the candidate-tenant rarely, if ever, sleeps or eats and only occasionally visits.
There is no question that the Legislature did not intend the strict definition of "residence” that is found in the Election Law when it dealt with the crime of criminal possession of a weapon. What immediately comes to mind is the fact that the Legislature clearly and intentionally used the word "home” rather than "residence” or "domicile” (in the Election Law "domicile” is synonymous with "residence”, Matter of Caligiuri v Maisel, 197 Misc 1000, affd 277 App Div 946, affd 301 NY 667) and it must be assumed that the use of the word "home” had a purpose. It is not difficult to conceive this purpose. A weapon certainly can be used for means of defense as well as means of aggression. The concept of the sanctity of the home is well established in our law and in many areas of criminal law a criminal act performed in a home is considered to be of a less severe degree than if committed elsewhere. Thus, while the Legislature prohibits the improper possession of a firearm, the penalty for such possession in the home is not as great as outside.
This court cannot consider the definition of a "home” in the *974 instant case to be more rigid than the definition of "residence” in the Election Law. As indicated, the courts have been liberal in defining "residence” stating that not only can there be more than one residence but that the individual concerned can decide which address he considers as his voting address (Matter of Gallagher v Dinkins, 41 AD2d 946, supra).
Accordingly, this court determines that at the time that the gun was found in defendant’s possession he was at his "home” within the meaning of former section 265.05 of the Penal Law.
Therefore, defendant is adjudged guilty of violation of former section 265.05 of the Penal Law as a misdemeanor.