OPINION OF THE COURT
Richard S. Lane, J.
What is the ambit of a "home” as that word is used in 1 subdivision (4) of section 265.02 of the Penal Law?
At the conclusion of all the evidence in this case, defendant moves for a trial order dismissing Count No. 4 of the indictment that charges him with criminal possession of a weapon in the third degree, in violation of said section 265.02, committed by possession of a loaded pistol outside his home or place of business.
Earlier counts in the indictment charge defendant with attempted murder in the second degree, assault in the first degree, and criminal possession of a weapon in the second degree. That defendant shot the complaining witness is uncontroverted, but the issue of justification is plainly raised by the evidence.
Likewise uncontroverted is the geographical location of the shooting.
*175 Defendant and the complaining witness both live in the B wing of the fifth floor of a single residency hotel in the West 90’s in Manhattan. Their rooms, together with five other individual rooms, all open onto a T-shaped hallway, as do two bathrooms and a kitchen provided for communal use. The respective parts of. the hallway measure approximately 25 and 14 feet in length. A locked door separates the hallway from a vestibule which contains an elevator and stairwell, and on the other side of which is another door leading into the A wing. Access to the B wing is limited to the tenants thereof who have keys and their invitees to whom they personally open the door.
The shooting took place in the hallway adjacent to the complaining witness’ room.
Defendant urges that the hallway constitutes part of his home. If he is correct, he cannot be guilty of criminal possession of a weapon in the third degree, which is a felony, but only of criminal possession of a weapon in the fourth degree, which is a misdemeanor (Penal Law, § 265.01). No definition of "home” is contained in article 265 of the Penal Law. Nor are the decisional authorities helpful. They are surprisingly few in number and none of them even remotely in point (see Ann., 57 ALR3d 938 et seq. for cases in other jurisdictions). The word "dwelling” is used in section 35.15 (subd 2, par [a] of the Penal Law) with respect to self-defense, but again no definition is provided. There are definitions of "public place” in article 240 of the Penal Law with respect to offenses against public order and in the new article 221 of the Penal Law with respect to possession of marijuana which are relevant but not dispositive. There is also a definition of "dwelling” in article 140 with respect to criminal trespass and burglary, but it is out of context here as are the various definitions in the Multiple Dwelling Law.
It seems clear enough that the hallways and other common areas of a large multiple dwelling would not be part of the "home”. Access, while perhaps not open to the public-at-large, is nevertheless relatively uncontrolled, and common understanding would not label such areas as living space; see People v Peters (18 NY2d 238, 244 [a stop and frisk case]); People v Beltrand (63 Misc 2d 1041, 1048, affd 67 Misc 2d 324 [a criminal trespass case]); People v Terrell (53 Misc 2d 32, 38 [a search and seizure case]); but see Matter of Jakeway v Bauer Co. (218 App Div 302 [a workmen’s compensation case]); *176 White v United States (283 A2d 21 [a gun case in the District of Columbia Court of Appeals]).
It is probable, although not as clear, that the common areas of smaller buildings would not be part of the "home.” Again access is not sufficiently controlled and again there is a serious question as to whether common understanding would deem such areas living space. (See People v Sullivan, 7 NY 396, and People v Childs, 21 AD2d 809 [both self-defense cases]; but, see, People v Taylor, 92 Mise 2d 29 [a gun case wherein Judge Glass of the Criminal Court in Queens held the stoop of a two-family house to be part of the home].)
On the other hand there is little doubt that the common areas of an apartment occupied by unrelated people as roomers would, except for unusual circumstances, be deemed part of the "home” (see People v Patterson, 21 AD2d 356 [a self-defense case]).
The instant case presents a cross between the large multiple dwelling and the apartment occupied by unrelated people. It would appear, however, to be closer to the latter. Access to the areas shared in common is tightly controlled. Such areas are not simply passed through during ingress and egress. Nor are they simply devoted to recreational and similar activities. They are shared for eating and bathing purposes essential to daily living and facilities for which are commonly found in any home. And the hallway is the connecting link between them and the sleeping rooms as are hallways and corridors in any home.
In reaching my conclusion that the hallway in which the shooting took place is part of defendant’s home, I am also taking into account the legislative objective as commanded by section 5.00 of the Penal Law. In minimizing the seriousness of possession of a gun in one’s home or place of business by reducing it from a felony to a misdemeanor, it is apparent that the Legislature was ascribing a quasi-respectable intent to the possessor — that of protecting himself and his property (see People v Santana, 77 Misc 2d 414, 415; see, also, People v Douglas, 82 Misc 2d 971, 973). In many jurisdictions such possession is wholly decriminalized. Accordingly I feel that the court should not reach out for a restrictive interpretation of "home,” but rather a broad one compatible with the Legislature’s purpose (see People v Merced, NYLJ, May 21, 1976, p 11, col 4).
*177 The People have argued to me that I should at least reserve decision and let Count No. 4 go to the jury to preserve the People’s right to appeal. Certainly I have weighed facts in reaching my conclusion, as contrasted with deciding that rarity — a pure question of law — and therefore a trial order of dismissal would foreclose appeal (People v Brown, 40 NY2d 381). However, Judge Jones’ opinion does not preclude dismissal under such circumstances. It merely calls on me to be aware of the consequences of my action. And an analysis of the specific situation with which I am confronted convinces me that I should act now.
Although not a pure question of law, this is a far cry from the other extreme in which a Judge weighs the sufficiency of the evidence. Certainly I could not leave the jury free to define "home” in a manner palatable to themselves. Such a charge was specifically condemned in People v Childs (21 AD2d 809, supra). Nor would it be desirable for the fabric of the law for my definition to be broad enough so that reasonable men adhering to it could reach different conclusions on the same findings of fact. And a precise definition in accordance with my foregoing opinion would render jury deliberation a mockery.
More serious, however, is the potential of prejudice to the interests of society. In arguing for the preservation of the right of appeal on defendant’s at best questionable violation of section 265.02 of the Penal Law, the People are risking his all but conceded violation of section 265.01 of the Penal Law. If I were to submit Count No. 4 without the lesser included count, a jury verdict of not guilty would completely free defendant. On the other hand, if I were to submit the lesser included count as an alternative, a jury verdict of guilty on the greater charge which I set aside as a matter of law, even if I were reversed on appeal, might cause double jeopardy to attach despite the provisions of CPL 300.50 (subd 4) and at the very minimum would require a new trial.
Accordingly, pursuant to CPL 290.10, the motion to dismiss Count No. 4 of the indictment is granted to the extent that only the lesser included count of possession in violation of section 265.01 of the Penal Law will be submitted.