*526 OPINION OF THE COURT
Meyer, J.
The Trial Judge correctly instructed the jury in a prosecution under subdivision (4) of section 265.02 of the Penal. Law for possession of a loaded firearm that a person’s home, within the meaning of the exclusion from that section, may “extend to facilities shared by several persons not related to each other” but does not encompass a place “to which the public or a substantial group of persons has access”. Reference in the charge, as an aid to the jury, to the definition of “public place” contained in a separate article of the Penal Law, while better left unsaid, was not under the circumstances of this case error. The order of the Appellate Division affirming defendant’s conviction under section 265.02 rather than section 265.01 should, therefore, be affirmed.
In apparent deference to the concept that possession of a loaded firearm to protect the persons or property in one’s home or place of business is less reprehensible than possession for other purposes (see People v Francis, 45 AD2d 431, 434, 435, n 1, affd without discussing the point 38 NY2d 150; People v Bargeman, 92 Misc 2d 173, 176), the Legislature has classified such possession as a misdemeanor punishable under section 265.01 of the Penal Law and possession outside the home or place of business as a class D felony (Penal Law, §265.02).[1] Though article 265 of the *527 Penal Law contains no definition of “home,” article 240 governing offenses against public order, for the purposes of that article, defines “public place” (§ 240.00, subd 1) to include “hallways, lobbies and other portions of apartment houses and hotels not constituting rooms or apartments designed for actual residence.” Defendant contends that by including in the charge defining “home” the section 240.00 definition of “public place,” the Trial Judge took from the jury the question whether he was in his “home” and was, therefore, guilty only of the misdemeanor rather than the felony.
Defendant was arrested as he stepped out of the elevator into the lobby of the Men’s Shelter at 8 East Third Street in Manhattan. The shelter is a six-story building run by the city’s Human Resources Administration to assist persons receiving public aid. Meals are provided in a dining area located in the basement. On the first floor are the lobby and reception area, a bathroom and the so-called “big room,” a large auditorium separate from the lobby where clients of the shelter watch television during the day and where those unable to stay in a hotel may sleep after midnight. The other floors of the shelter contain offices, a library, a recreation area, a mailroom and a unit for bedridden clients.
Members of the Permanent Population Unit of the shelter receive lodging service, a meal ticket, clothing vouchers and other counseling and assistance. Lodging service for most PPU members consists of a ticket for one month’s lodging at one of six hotels on the Bowery, but those unable to get hotel lodging may sleep in the big room. Many members sleep in parks or in building hallways.
Defendant had been a member of the shelter’s Permanent Population Unit for 19 months before he was arrested. He ate most of his meals at the shelter, spent about four hours a day there using the recreational facilities or obtaining services, received his mail there, and voted from *528 that address. He slept at the hotel to which he was ticketed, or in the big room or in parks or hallways when he did not obtain a hotel room, but always returned to the shelter for breakfast. To get to the dining room in the basement or to the recreational facilities or offices on the upper floors one must use the elevator or stairway, both of which open into the lobby. To get to the big room from the elevator or stairway one must walk through the lobby. On an average day 900 to 1,200 shelter clients pass through the lobby as well as a number of other persons who are not clients of the shelter.
At trial defendant admitted possession of a loaded revolver but contended that the shelter was his home and that, therefore, he could only be convicted of the misdemeanor (possession in the fourth degree) and not the felony (possession in the third degree). The Trial Judge submitted to the jury the questions of possession, whether the thing possessed was a firearm, whether it was loaded and whether the shelter was defendant’s home, charging on the last as set forth in the margin.[2] The jury found defendant *529 guilty of possession of a loaded firearm not in his home. The Appellate Division affirmed, one Justice dissenting, holding that the portion of the shelter in which defendant was arrested could not constitute his home because he had no expectation of privacy in it. The appeal is before us by permission of the dissenter at the Appellate Division.
The absence of a statutory definition of the word “home” as used in subdivision (4) of section 265.02 of the Penal Law like the lack of a definition of the phrase “place of business” as used in that subdivision,[3] has caused Trial Judges to seek analogy in other provisions of the Penal Law or Criminal Procedure Law, as well as in the Election Law and in the case law governing both inheritance and workers’ compensation (People v Bargeman, 92 Misc 2d 173, supra; People v Taylor, 92 Misc 2d 29; People v Douglas, 82 Misc 2d 971; People v Lemelle, 81 Misc 2d 674). The spirit and intent of the various other statutes relied upon, as well as their language,[4] differ materially, however, from that of the gun control law.
The result has been something of a ragout. Thus, People v Lemelle (supra) held that a loaded pistol in a garbage can at the side of defendant’s house was not in defendant’s home, a result which may appear correct if one emphasizes the word “in” in the statutory phrase “possession [which] *530 * * * takes place in such person’s home” (italics and bracketed word supplied), but People v Taylor (supra, p 30) held that an intoxicated person lying “with half of his body on the stoop and half in the inner hallway of a two-family house” was in his home, because the hallway and porch were not public places and were part of the curtilage, and in People v Merced (NYLJ, May 21, 1976, p 11, col 4) the Trial Judge in a Bench trial, refusing to exclude from the home a backyard, driveway or porch, held that possession of a loaded pistol within the fenced-in driveway of defendant’s home was but a misdemeanor.[5]
In People v Douglas (82 Misc 2d 971, supra), a Bench trial, the Trial Judge held the abode of a lady with whom defendant had “a strong social connection,” where he ate many of his meals and often stayed overnight, was defendant’s home within the meaning of the gun control law, though defendant had another abode where he stayed at times, and in People v Bargeman (92 Misc 2d 173, supra) the common hallway linking sleeping rooms of unrelated persons to the bathroom and other common facilities in the wing of the hotel in which they lived together, the hallway being separated by a locked door from the vestibule, elevator and stairwell and from the entrance to another wing of the same residency hotel, was held part of defendant’s home as a matter of law. Though based on widely different reasoning, both seem to have interpreted the subdivision realistically in light of the legislative intent.
The common though unarticulated thread of all of the decisions above referred to is, as the Appellate Division suggests, whether the possessor of the weapon was entitled to “privacy, as one would have in his home” in the area where he was apprehended with the weapon. The very antithesis of privacy is unlimited public access, no matter how closely related the possessor, as a subjective matter, may feel to the particular area as part of what he calls “home,” or the extent to which he uses the area as one would a part of his home. To possess a weapon for the purpose of protecting one’s person or property within the common area of the residence of a limited group such as *531 was involved in Bargeman (supra) is within the legislative intent because in such an area the limited group is entitled to privacy and the public does not have access. A common hallway outside the group residence, however, is not within that intent because there strangers to the group are allowed access and there is there no right to privacy (cf. People v Peters, 18 NY2d 238, 244, affd 392 US 40; see, also, Ann., 57 ALR3d 938) and more possibility of harm to others from the carrying of a loaded weapon.
Tested against this criterion the charge as given by the Trial Judge was proper. Though it did not speak of entitlement to privacy in so many words, it did distinguish types of buildings and areas within buildings and refer to the limitation of access to the area in question. Defendant argues, on the basis of our holding in People v Neumann (51 NY2d 658), that the charge erroneously applied the “public place” definition of article 240 to an article 265 crime. To the extent that the charge told the jury that the definition was from the Penal Law, it was certainly better left unsaid, for section 240.00’s definitions are expressly stated to be “applicable to this article” (cf. Penal Law, § 10.00, defining terms of general use in the entire chapter), and as the charge was worded the jury may well have understood that the public place definition read to them was a definition which the Legislature had provided for use in construing article 265. Under the circumstances of this case, however, the charge was not erroneous. The uses defendant made of the shelter were essentially recreational and consultative, rather than residential. More importantly, the lobby in which defendant was arrested and in which, he admits, he was possessed of a loaded firearm was one through which passed more than 900 people per day and to which not only shelter clients who did not reside there and shelter employees but also the public had unlimited access.
Defendant argues further, from People v Wicker (78 Misc 2d 811) and People v Merced (NYLJ, May 21, 1976, p 11, col 4), both supra (holding that a driveway, though open to the public, is part of a “home”), that the “public place” definition of section 240 was overly broad to be used in his case and, in effect, directed a verdict against him. There is, *532 however, a material difference between such occasional use by persons who are of the “public” only in the sense that they are not part of the resident’s household and the numerous persons who for many and varying reasons had access without limit to the Men’s Shelter lobby area. Defendant was not entitled to a charge on the theory of the Wicker and Merced cases.
For the foregoing reasons, the order of the Appellate Division should be affirmed.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, Wachtler and Fuchsberg concur.
Order affirmed.

. Section 265.02 provides, in pertinent part: “A person is guilty of criminal possession of a weapon in the third degree when: (1) He commits the crime of criminal possession of a weapon in the fourth degree as defined in subdivision one, two, three or *527 five of section 265.01, and has been previously convicted of any crime; or *** (4) He possesses any loaded firearm. Such possession shall not, except as provided in subdivision one, constitute a violation of this section if such possession takes place in such person’s home or place of business.”

. “The word ‘home’ is subject to many definitions, while in many instances it is simple to define or equate the word ‘home’ with a designated type of dwelling such as a particular house or an apartment occupied by a single person or a family unit, the word ‘home’ may also extend to facilities shared by several persons not related to each other. Thus where several persons share a common area, for those purposes essential for daily living such as sleeping, eating, bathing and resting purposes such areas may also constitute a home provided that access to those particular facilities is in some way controlled or limited to those seeking to utilize those facilities as their home or residence. Now, in this case you have heard testimony with respect to the nature of the premises located at 8 East Third Street that is that it is a Mens’ Shelter. You also heard testimony with respect to what contact the defendant had with such facility as well as testimony as to the location within that building where the defendant was stopped by the officer. And it is important to note that in regard to that, even a person may be said to have his home in a particular structure or building the particular portion of that building which may be said to constitute that person’s home will necessarily depend upon the type of building involved. Thus, for example, in an apartment building a person’s home is limited to the confines of a particular apartment occupied by the person, while in a one family private dwelling the entire structure constitutes the home. Now, to aid you in this case I am going to read to you the definition of the wordfs], public place, which appears in our penal law, since a home cannot also be a public place. The law defines a public place as follows: A public place means, a place to which the public or a substantial group of persons has access and includes but is not limited to highways, transportation facilities, schools, places of amusement, parks, playgrounds and hallways and lobbies, and other portions of apartment houses and hotels not constituting rooms or apartments designated for actual residence. Therefore, if you should find that the area in which the defendant was found in possession of the gun in this case was a public place within the meaning of the definition that I have just given you, it cannot be the defendant’s home, for the purpose of this statute, even if you should find that there were other areas within the shelter that did constitute his home.”

. (See People v Francis, 38 NY2d 150, 152; People v McWilliams, 96 Misc 2d 648.)

. The word “dwelling” is used in the section of the Penal Law governing justification (Penal Law, §35.15, formerly §1055) and its purpose, to define the obligation to retreat rather than fight in self-defense, is almost diametrically opposed to the purpose behind subdivision (4) of section 265.02 of the Penal Law. “Dwelling” rather than “home” is also used in article 140 governing criminal trespass and burglary, but is specifically defined by subdivision 3 of section 140.00 to mean “a building which is usually occupied by a person lodging therein at night”, a definition included within but not as broad as the usual connotation of “home” (cf. Webster’s, Third New International Dictionary, p 1082 [“the house and grounds with their appurtenances habitually occupied by a family”]). GPL 140.50 permits a stop and frisk in a “public place”, for some but not all purposes the antithesis of “home.” Article 240 governing offenses against public order also uses the phrase “public place,” but with specific definitions in sections 240.00 and 240.37 tailored to the specific offenses dealt with. The section 240.00 definition is carried over to subdivision 1 of section 221.10 differentiating the burning of marihuana in a “public place” from other degrees of possession, a purpose similar to but distinguishable from (because of the unusual odor of marihuana) that of the gun control law. Subdivision 3 of section 265.35, without defining “public place,” makes it a misdemeanor to discharge a firearm in a public place except in self-defense or in the discharge of official duty. The Election Law refers to a voter’s “residence,” which is specifically defined in subdivision 22 of section 1-104 (see, also, §§ 5-104, 5-222) with the purpose of qualifying the right to vote or to run for office, clearly a materially different purpose than that of article 265.

. The same result was reached under subdivision 3 of section 265.35 (discharge of a firearm “in a public place”) in People v Wicker (78 Misc 2d 811).