THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JETTER LOTT, Appellant.

Fourth Department, July 13, 1984

APPEARANCES OF COUNSEL

*Palmer, Greenman & Hurley* (*Herbert Greenman* of counsel), for appellant.

*Richard J. Arcara, District Attorney* (*J. Michael Marion* and *John J. DeFranks* of counsel), for respondent.

**OPINION OF THE COURT**

CALLAHAN, J. P.

This appeal raises interesting issues in applying the principle that absent exigent circumstances or consent, police may not enter a suspect's home to make a warrantless arrest (*Payton v New York,* 445 US 573; *People v Levan,* 62 NY2d 139; *People v Soto,* 96 AD2d 741). Did the police action in seizing a loaded weapon and other contraband in defendant's apartment violate this principle?

At approximately 12:30 to 12:45 A.M. on October 23, 1981, a man and woman entered the Fourth Precinct station house in the City of Buffalo and informed a plain-clothes police lieutenant that the woman had just been robbed of her money, keys and purse by defendant Jetter Lott at his apartment house located at 70 Sycamore Street. The couple also told the officer that the defendant had a gun in his apartment which he kept on top of a cabinet and that he also had some pills and drugs in the apartment. In response to this information, the lieutenant summoned two other officers and they proceeded to 70 Sycamore Street. The lieutenant testified that he was familiar with this address and knew it to be a two-story rooming house having long hallways with rooms running off them on each floor.

When police arrived at that address, they found the front door to be locked. They knocked on the door and identified themselves as police officers to a person who responded to their knocking. They told this unidentified individual that they had a complaint and were looking for Jetter Lott. After a few minutes delay, the individual opened the door and the police went inside.

It is undisputed that the police had neither an arrest nor a search warrant. Once inside the building, they asked the unidentified individual where defendant's room was, but he did not answer. The police then started up the stairs toward the second floor. When they were about halfway up the stairs, they saw defendant at the top of the stairs dressed in a bathrobe. The lieutenant displayed his badge and asked defendant whether he was Jetter Lott. When the defendant nodded affirmatively, the lieutenant informed him that they were police officers and were there on a robbery complaint involving him. By this time, other individuals were coming out of their rooms into the hallway. The defendant was asked: "Where is your room?" Without answering, defendant turned around and started walking down the hall. The officers, walking "pretty fast", caught up with defendant at the open doorway to his room. Defendant and two police officers entered defendant's room "almost simultaneously" with the lieutenant right behind them. Since the lights were out in the room, the lieutenant

shined his flashlight inside. With the light from his flashlight, he spotted a revolver lying on the couch. He seized the weapon and placed defendant under arrest. A further search of the apartment uncovered a quantity of drugs and the victim's keys, personal papers and some money. Defendant was taken outside where he was identified by the complainant as the person who had robbed her. At the suppression hearing, the lieutenant testified that his "main purpose" in going to defendant's apartment that evening was "to seize Mr. Lott. We wanted to arrest him * * * And recover the weapon, if possible."

At the conclusion of the hearing, the suppression court found that the entry to defendant's apartment, his arrest and search incident to it, did not violate defendant's rights "due to the particular exigent circumstances present". The court therefore denied defendant's motion to suppress the items seized as evidence at trial. Defendant thereafter pleaded guilty to a reduced charge of attempted criminal possession of a weapon in the third degree. On this appeal, he seeks review of the order denying his motion to suppress the gun and other contraband found in his apartment.

The right of people to be secure in their house is expressly provided for in both the Fourth Amendment of the United States Constitution and section 12 of article I of the New York Constitution. The United States Supreme Court has forcefully stated: "In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." (*Payton v New York,* 445 US 573, 590, *supra.*) The New York Court of Appeals has recently reiterated this principle decreeing that no private dwelling may be entered by the police to arrest its occupant if an arrest warrant has not been obtained (*People v Levan,* 62 NY2d 139, *supra*).

In the absence of "exigencies of the situation [that] made that course imperative" (*McDonald v United States,* 335 US 451, 456), all warrantless searches are presumptively unreasonable per se (*People v Knapp,* 52 NY2d 689, 694; *People v Hodge,* 44 NY2d 553, 557; see, also, *Schneckloth v Bustamonte,* 412 US 218, 219; *Katz v United States,* 389 US

347, 357). Thus, where there has been a warrantless intrusion, the People have the burden of overcoming this presumption (*People v Knapp, supra,* p 694; *People v Calhoun,* 49 NY2d 398, 402; *People v Hodge, supra,* p 557).

Here, it is undisputed that defendant was arrested in his apartment and that police entered without consent and without any warrant. The People sought to justify this warrantless entry into defendant's home based upon exigent circumstances (see *People v Mealer,* 57 NY2d 214; *People v Battee,* 94 AD2d 935). The People contend that the warrantless intrusion here was justified because they had just been informed that defendant had committed a robbery, that he had a gun in his apartment and finally because they were concerned about their safety when they encountered defendant in the hallway outside his apartment and he "precipitously" hurried back to his room where the gun was located. The suppression court agreed that these circumstances justified the police in making a warrantless entry into defendant's apartment. For the reasons that follow, we disagree.

Exigent circumstances have been found to exist whenever, though there is probable cause to search, "urgent events make it impossible to obtain a warrant in sufficient time to preserve, ' "evidence or contraband threatened with removal or destruction" ' " (*People v Knapp, supra,* p 696, quoting *People v Vaccaro,* 39 NY2d 468, 472, and *Chapman v United States,* 365 US 610, 615). More recently, in *People v Mealer* (57 NY2d 214, *supra*), the Court of Appeals found exigent circumstances to exist "in light of the gravity of the crime, the suspect's possession of and willingness to use a gun, and the likelihood of his attempting to escape" (*People v Mealer, supra,* p 219; see, also, *People v Battee, supra,* p 935). The mere fact that police have information that a weapon is located within a suspect's apartment, however, does not justify a warrantless entry (*Matter of Kwok T.,* 43 NY2d 213, 220-221). Here, police were informed that defendant had robbed Jacqueline Thomas. Both Ms. Thomas and her companion also advised police that the defendant had a gun in his apartment, although neither asserted that defendant had used the gun in connection with the alleged robbery. Thus, police had probable cause to obtain either a

warrant to arrest defendant for robbery or search his premises for a weapon. Rather than obtain a warrant of any kind, they proceeded directly to defendant's house to "arrest [defendant] * * * [a]nd recover the weapon, if possible." Under the circumstances of this case, there was no excuse for proceeding without a warrant, "unless it was the personal impatience or inconvenience of the police, considerations which never may be permitted to outweigh the constitutional interests at stake" (*People v Knapp, supra,* p 697, citing *Steagald v United States,* 451 US 204). The time and effort required to comply with the warrant prescription, and any delay it may have occasioned in arresting defendant and seizing the weapon, "presented no demonstrated danger to the public or the police." (*People v Knapp, supra,* p 697.)

Nor can exigent circumstances be premised on the encounter with defendant on the stairs and in the hallway outside his room. Although hallways are often of a public nature (see *People v Powell,* 54 NY2d 524), common hallways linking sleeping rooms of unrelated persons sharing common facilities in the wing of a hotel in which they lived together, the hallway being separated by a locked door from the vestibule, elevators and stairwell and from the entrance to another wing of the same residency hotel, have been held to be part of defendant's home as a matter of law (*People v Bargeman,* 92 Misc 2d 173, cited with approval in *People v Powell, supra*). Furthermore, while lobbies, hallways and stairways where strangers are allowed unlimited access have been considered public places (*People v Powell, supra; People v Peters,* 18 NY2d 238, 244, affd *sub nom. Sibron v New York,* 392 US 40), a hallway located in a building, access to which was limited to residents of the building and their guests, with a locked front door insuring this security, has been held to be within the defendant's "dwelling" (*People v McCurdy,* 86 AD2d 493). Here, the proof is clear that the entrance to the front door of defendant's rooming house was locked. Under these circumstances, we view the stairway and hallway outside defendant's room as part of defendant's home where his right to be secure shall not be violated.

Furthermore, we reject the prosecution's argument that police action was justified because they were fearful for

their personal safety and for the safety of other residents of the rooming house who were in the hallway when they encountered defendant and he hurried back to his room. Police "cannot by their own conduct create an appearance of exigency" (*People v Levan*, 62 NY2d 139, 146, *supra*). Inasmuch as the police were present in the hallway outside defendant's room without authority of any warrant, they cannot thereafter utilize this presence to assert that exigent circumstances arose when defendant retreated to his room, no matter how precipitous the retreat.

Additionally, we find that police entry to the rooming house was not justified on any theory of consent. Although the law recognizes that a third party who possesses the requisite degree of control over specific premises has authority to permit an official inspection of such premises (see, e.g., *People v Cosme*, 48 NY2d 286, 291-292; *People v Wood*, 31 NY2d 975; *People v Carter*, 30 NY2d 279; see, also, *United States v Matlock*, 415 US 164; *People v Battee, supra*), the People never sought to justify this search on the basis of third-party consent. The record, though scant on this issue, refutes the consent argument. The front door to the rooming house was locked and was opened by an unidentified individual only after repeated police knocking and demands that the door be opened. Once inside, police did not question this individual about his authority nor did they seek his consent to intrude further, but instead proceeded immediately up the stairs toward defendant's room. On this record, we must conclude that the officers did not obtain the consent of a third party to justify their warrantless intrusion.

Finally, to the extent that the suppression court's conclusion is based on the "plain view" doctrine, it must be rejected. Since the warrantless entry into defendant's room had no prior justification, the objects observed and thereafter seized must be suppressed as the product of that illegality (*People v Knapp, supra*, p 697; *People v Allende*, 39 NY2d 474, 477).

We conclude that there were no exigent circumstances or consent which justified this entry into defendant's home to make a warrantless arrest. Accordingly, the judgment of

conviction should be reversed, the motion to suppress should be granted and the indictment dismissed.

DENMAN, BOOMER, O'DONNELL and SCHNEPP, JJ., concur.

Judgment unanimously reversed, on the law and facts, defendant's motion to suppress granted, and indictment dismissed.