OPINION OF THE COURT
Juan M. Merchan, J.
Background and Procedural History
Defendant was indicted on January 8, 2013, for the crimes of identity theft in the first degree pursuant to Penal Law § 190.80 (2) (two counts); grand larceny in the third degree pursuant Penal Law § 155.35 (1); and grand larceny in the fourth degree pursuant to Penal Law § 155.30 (1).
On May 21, 2013, this court commenced a jury trial. At the conclusion of the People’s case, defendant moved for a trial order of dismissal pursuant to Criminal Procedure Law § 290.10 as to counts 1 and 2 of the indictment, identity theft in the first degree. Defendant argued that neither the victims nor any third party had suffered financial loss as required by the statute. Specifically, defendant contended that the victims did not incur financial loss because they were ultimately reimbursed by the banks. Further, defendant argued that the record is devoid of any testimony that the banks or any other third party suffered any financial loss. This court reserved decision.
On May 29, 2013, the jury returned a verdict finding the defendant guilty on all counts in the indictment.
Evidence Adduced at Trial
In 2011, the defendant, Ana Rosario, was employed as a home aide for Martin Berkowitz, then 87 years old and residing in Manhattan, and one of the complainants in this case. In or around September of 2011, Mildred David, Mr. Berkowitz’s girlfriend and the second complainant herein, noticed that her checking account had been inexplicably depleted of all funds. Ms. David investigated the matter and learned that four unauthorized payments totaling $2,589.94 had been made from her checking account to an unknown Capital One Credit Card. {See *394 People’s exhibits 2, 9.) A review of Mr. Berkowitz’s Chase bank account revealed that multiple, unauthorized charges totaling over $5,000 had been made from his bank account as well, including the purchase of airline tickets to the Dominican Republic and payments to unknown Citibank and Macy’s credit card accounts. (See People’s exhibits 1, 1A.)
A police investigation revealed that from on or about July 2011, to on or about September 2011, the defendant, Ana Rosario, had used Mr. Berkowitz’s and Ms. David’s bank account numbers and personal identifying information to make both payments to her own credit cards and unauthorized purchases for her and her family. (See People’s exhibits 3, 4, 5, 6a, 6b, 6c.) When the defendant was interviewed by the police, she admitted to using Mr. Berkowitz’s Chase account to purchase airline tickets to the Dominican Republic without his permission. Defendant was subsequently arrested on April 13, 2012. Evidence was introduced at trial which established that Mr. Berkowitz and Ms. David were eventually reimbursed by their respective banks.
Legal Issue
On May 28, 2013, during its deliberations, the jury sent the court a note requesting “clarification of the definition of financial loss in the context of Identity Theft.” (Court exhibit No. 2.) The attorneys first read the note, and then the court read it into the record. Because the term “financial loss” is not specifically defined in the Penal Law or the pattern jury charges in the context of identity theft under Penal Law § 190.80 (2), the court afforded counsel an opportunity to propose a clarifying response. Defense counsel proposed that the court instruct the jury that “financial loss would be that the victims suffered a financial loss as a result of . . . element one of the four elements.” (Tr at 15, lines 8-11.)
Following extensive discussions amongst the parties and the court, which continued the following day, on May 29, 2013, this court instructed the jury, over defendant’s objection, as follows: “Loss is not the ultimate harm suffered by the victim, but is rather the value of what was taken. Loss includes the value of all property taken, even though all or part of it was returned.” (Tr at 17, lines 13-16.) Such definition was drawn by the court, in part, from United States v Arjoon (964 F2d 167 [2d Cir 1992]), which cited Application Note 2 to section 2B1.1 of the Federal Sentencing Guidelines.
*395 By notice of motion dated June 13, 2013, defendant moved for an order to set aside the jury verdict pursuant to CPL 330.30 (1) on the ground that the court’s response to the jury note was improper. Specifically, defendant contends that the court erred in providing to the jury a definition of “financial loss” which is not contained in the identity theft statute. Defendant argues that appellate courts have cautioned trial courts against reliance upon definitions contained in other sections of the Penal Law or found in other state or federal statutes absent legislative authority to do so.
The People argue in opposition to defendant’s motion that the court properly instructed the jury on the definition of “financial loss,” as the term is not specifically defined in article 190 of the Penal Law or anywhere else in the Penal Law. The People further assert that the definition given by the court is in line with the legislative intent of the identity theft statute. Specifically, the People posit that
“the Legislature recognized that complaining witnesses may be injured by identity theft even when they have been reimbursed by a bank. Additionally, the Legislature recognized that banks and other financial institutions may also be victims of identity theft crimes, in that they incur financial loss in reimbursing bank customers and in related transaction costs.” (People’s affirmation in response to defendant’s motion to set aside the verdict at 5.)
Upon review of defendant’s motion, including all papers filed in support of and opposition thereto, as well as the case record, and after due deliberation thereon, defendant’s motion to set aside the verdict pursuant to CPL 330.30 (1) is hereby denied.
Conclusions of Law
CPL 330.30 (1) provides that
“[a]t any time after rendition of a verdict of guilty and before sentence, the court may, upon motion of the defendant, set aside or modify the verdict or any part thereof upon the following grounds:
“1. [a]ny ground appearing in the record which, if raised upon an appeal from a prospective judgment of conviction, would require a reversal or modification of the judgment as a matter of law by an appellate court.”
Defendant argues that the court should set aside the verdict with respect to counts 1 and 2 of the indictment, identity theft *396 in the first degree (Penal Law § 190.80 [2]), on the ground that the court improperly instructed the jury as to the definition of “financial loss.” This court is not persuaded.
“A person is guilty of identity theft in the first degree when he or she knowingly and with intent to defraud assumes the identity of another person by presenting himself or herself as that other person, or by acting as that other person or by using personal identifying information of that other person, and thereby: . . .
“2. causes financial loss to such person or to another person or persons in an aggregate amount that exceeds two thousand dollars . . . .” (Penal Law § 190.80 [2].)
Under New York Penal Law, the term “financial loss” is not defined in the context of identity theft.
It is well settled that “CPL 310.30 imposes two distinct duties on a court that receives a note from the jury: first, a duty to notify counsel about the note, and second, a duty to provide a ‘meaningful response.’ ” (People v Kadarko, 14 NY3d 426, 429 [2010], citing People v O’Rama, 78 NY2d 270 [1991]; People v Malloy, 55 NY2d 296, 301 [1982] [“in responding to jury inquiries, (the trial court) must give meaningful supplemental instructions”]; People v Gonzalez, 293 NY 259, 262 [1944] [“a trial judge simply cannot refuse to answer a pertinent question from the jury”].) “The trial court, required under CPL 310.30 to ‘give such requested information or instruction as the court deems proper’, is vested with some measure of discretion in framing its response and is in the best position to evaluate the jury’s request in the first instance.” (People v Malloy, 55 NY2d 296, 302 [1982].)
Defendant proposed that the court instruct the jury that financial loss means that “the victims suffered a financial loss” or that “it is a financial loss that a party suffered.” However, such an instruction would not have provided the jury with a “meaningful response,” as it merely parroted the term for which the jury requested clarification without providing a meaningful definition. Indeed, adopting such language would have been tantamount to providing no instruction at all. In effect, it would have constituted a failure to instruct the jury as to a legal term, or in other words been “a refusal to clarify their doubts.” (People v Gonzalez, 293 NY 259, 261 [1944].) In Gonzalez, the jury requested additional instructions as to whether, in a murder *397 case, the defendant’s original act of placing a gun in a pocket for protective purposes, and subsequently using it in the commission of a homicide would constitute premeditation. The court responded: ‘T am unable to answer your question in that form, except as already given in my original charge.” The Court of Appeals reversed defendant’s conviction for murder in the first degree on the ground that the court’s response to the jury’s question constituted a refusal to instruct the jury as to an applicable proposition of law. (Gonzalez at 261.)
Here, it is undisputed that neither the Penal Law nor the pattern jury charges contain a definition of the term “financial loss” in the context of identity theft. Thus, this court was compelled to craft a meaningful response to the jury by reference to other sources. In doing so, it adopted the definition of “financial loss” contained in United States v Arjoon (964 F2d 167 [2d Cir 1992]). Such definition embraces the intent of the legislature when it enacted the statutes criminalizing identity theft.
In considering the proper response, this court adhered to New York’s rules of statutory construction which “require that, where it is possible to do so, the various parts of the statutory scheme be harmonized, reading and construing them together, and reconciling the apparently conflicting provisions in the manner most consistent with the overall legislative intent.” (Matter of Ador Realty, LLC v Division of Hous. & Community Renewal, 25 AD3d 128, 134 [2d Dept 2005] [citations omitted]; see McKinney’s Cons Laws of NY, Book 1, Statutes § 97.) Thus, in ascertaining the meaning of a statute, courts must of necessity examine the statute’s purpose and determine the intention of the legislature. (Williams v Williams, 23 NY2d 592, 598 [1969].) Indeed, “[t]he primary consideration of the courts in the construction of statutes is to ascertain and give effect to the intention of the Legislature.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 92.) “In matters of statutory construction, legislative intent is the great and controlling principle, and our proper judicial function is to discern and apply the will of the Legislature.” (People v Allen, 92 NY2d 378, 383 [1998] [citations and internal quotation marks omitted]; People v Santi, 3 NY3d 234, 243 [2004].)
Penal Law § 190.80 was enacted in 2002 as part of a comprehensive package of laws, the purpose of which was to protect and vindicate the rights of consumers victimized by the crime of identity theft:
“The United States Public Interest Research Group *398 estimated that in 1995 banks lost approximately $90 million due to identity theft. That number continues to grow. . . . Some courts view the banks and other entities that issue credit as the only victims in these cases. Unfortunately, consumers who have been left with damaged reputations, bad credit reports and the resource-consuming task of trying to correct the false credit record information, are also victims.
“This bill would remove . . . significant obstacles to prosecuting identity theft in New York [S]tote.” (Assembly Mem in Support, 2002 McKinney’s Session Laws of NY at 2094; see also Budget Rep on Bills at 2, Bill Jacket, L 2002, ch 619.)
A definition for the term “financial loss” was not contained in the identity theft statute or in subsequent amendments thereof. However, the legislative history of Laws of 2002, chapter 619, establishes that sections 190.77 through 190.84 of the Penal Law were enacted to penalize the offenses of identity theft and unlawful possession of personal identification information and provided for “reparation for the actual out-of-pocket loss caused thereby and . . . any costs or losses incurred due to any adverse action taken against the victim.” (Penal Law § 60.27 [1].) Thus, the law recognizes that victims of identity theft face residual effects as a result of the crime, which go beyond the monetary value unlawfully taken, such as damaged credit records, time and resources spent investigating allegations of identity theft and remediating the actual harm derived from the offense.
In fact, Laws of 2002, chapter 619 expanded the definition of “victim” in the context of identity theft by amending Penal Law § 60.27 to include financial institutions and credit card companies. As amended, Penal Law § 60.27 includes within the definition of “victim,”
“the victim of the offense, ... an individual whose identity was assumed or whose personal identifying information was used in violation of section 190.78, 190.79 or 190.80 of this chapter, or any person who has suffered a financial loss as a direct result of the acts of a defendant in violation of section 190.78, 190.79, 190.80, 190.82 or 190.83 of this chapter . . . .” (Penal Law § 60.27 [4] [b] [emphasis added].)
Pursuant to Penal Law § 10.00 (7), “ ‘[plerson’ means a human being, and ... a public or private corporation . . . .” Thus, the *399 purpose of the statute is to include private corporations, such as banks, as “victims” of identity theft.
It is evident from the Assembly Memorandum that the legislature was concerned not only with actual out-of-pocket losses to individual consumers but to all losses extending even to situations where money is ultimately reimbursed. Were this court to adopt defendant’s argument, there would be no criminal liability under any level of identity theft in any instance where the loss is reimbursed either by a financial institution or by the person accused of committing the crime. Such a result would defy logic and would be clearly contrary to the legislature’s intent.
In determining the intent of the legislature, “courts normally accord statutes their plain meaning, but will not blindly apply the words of a statute to arrive at an unreasonable or absurd result.” (People v Santi, 3 NY3d 234, 242 [2004] [citations and internal quotation marks omitted].) Rather, “[c]ourts look to a statute as a whole so as to construe it in a manner consistent with the presumption that unreasonable results are not intended by the Legislature.” (Matter of Pokoik v Department of Health Servs., County of Suffolk, 72 NY2d 708, 718 [1988].)
The third element of identity theft in the first degree under Penal Law § 190.80 (2) requires that the defendant cause “financial loss to [the person from which she used personal identifying information] or to another person” (emphasis added). In this case, even though the money was ultimately reimbursed to the civilian victims, the defendant did indeed cause financial loss to those civilian victims for a period of time, however temporary. The testimony adduced at trial demonstrates that the victims were deprived of their money from the time the defendant used the money to make unauthorized purchases until such time as the financial institutions reimbursed the money to the civilian victims. During that period the money was not available to the civilian victims for their use.
Further, the defendant clearly caused financial loss to the financial institutions which were forced to reimburse the money and were ultimately financially responsible for the unauthorized charges.
Defendant relies on People v Powell (54 NY2d 524 [1981]) and People v Hernandez (98 NY2d 175 [2002]) in support of her claim that this court should not have relied on a definition contained in another statute, absent legislative intent to do so. However, Powell and Hernandez are clearly distinguishable. In *400 Powell, the Court of Appeals stated its disapproval in the practice of trial judges seeking to analogize provisions of the Penal Law and Criminal Procedure Law with provisions of the Election Law in cases pertaining to inheritance and workers’ compensation to define the term “home” in the context of criminal possession of a weapon cases. (People v Powell, 54 NY2d 524, 529 [1981].) The Court in Powell held that “the spirit and intent of the various other statutes relied upon, as well as their language, differ[ed] materially . . . from that of the gun control law.” (Powell at 529.)
Likewise, the Court in Hernandez held that the definition of the word “dwelling” in article 140 of the Penal Law (burglary and related offenses) may not be relied upon to define the “no duty to retreat” rule contained in the justification charge. The Court noted that both statutes addressed different concerns and that the interests addressed in article 140 of the Penal Law substantially differ from the interests implicated in the justification defense. (People v Hernandez, 98 NY2d 175 [2002].)
Unlike Powell and Hernandez, this court relied upon the definition of “financial loss” contained in federal case law and the Federal Sentencing Guidelines specifically used in the context of financial crimes, including “Larceny, Embezzlement, and Other Forms of Theft . . . Fraud and Deceit.” (US Sentencing Guidelines Manual § 2B1.1.) These offenses closely mirror the offense of identity theft, which contains as an element “financial loss,” which was the subject of the jury note. The offenses enumerated in the Federal Sentencing Guidelines (US Sentencing Guidelines Manual § 2B1.1) protect the same interests that the New York Legislature sought to protect when it enacted Penal Law § 190.80.
For the foregoing reasons, defendant’s motion to set aside the jury verdict pursuant to GPL 330.30 (1) is hereby denied in its entirety.