THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SAMUEL WHITE, Appellant.

First Department, May 10, 1979

## APPEARANCES OF COUNSEL

*Gary R. Sunden* for appellant.

*Steven J. Shapero* of counsel *(Norman A. Bloch* with him on the brief; *Robert M. Morgenthau, District Attorney),* for respondent.

OPINION OF THE COURT

LUPIANO, J.

On February 2, 1976, at approximately 9:30 P.M., a grocery store was robbed by three men. One of the owners identified defendant as one of the perpetrators. Defendant was also identified by a brother of the owner who, standing behind a meat refrigerator in the store, viewed defendant through the glass sides of the refrigerator. This robbery, of some five minutes' duration, occurred under generally well-lit conditions. Defendant presented an alibi defense urging that he was visiting his grandmother at the time. Rebuttal testimony was elicited tending to show that the grandmother's house was only 15 minutes by automobile from the grocery store. In summation, the defense argued that the eyewitness identification by this owner and her brother was weak.

After summation, and during its deliberative process, the jury sent a note to the trial court, as follows: "Six jurors completely confused on layout of store. Would like to see store." In the ensuing colloquy between the prosecutor, defense counsel and the court, it was agreed that CPL 270.50 did not foreclose the possibility of having a jury visit the scene of a crime after summation, provided it was done by consent of the People and the defendant. Both the People and the defendant consented to have the jury view the store premises where the crime occurred, and the defense counsel also specifically waived any objection on appeal to the mere viewing by the jury of the crime scene.

However, defense counsel, noting that certain transitory personalty, to wit, a potato chip rack and a hosiery rack, had been moved at the crime scene since the time of the crime, requested a supplemental instruction by the court to the jury to the effect "[t]hat some things are not going to be exactly in the same position." The trial court refused, on the basis that the letter from "[t]he jury doesn't indicate that," but merely requests to view the scene and that such viewing is proper if there has been no substantial change in the location of the general articles in the store, but that if there has been such change, it would be useless for the jury to visit the scene. Upon noting that the testimony indicated that the crime scene was "about the same now as it was at that time" (the time of the crime), to which observation the prosecutor acceded, and upon direct inquiry by the court, the defense counsel, ac-

knowledged that there was no change, except that the racks had been moved out because of restocking of shelves.

Characterizing this change as "a small item," the court observed that it is the jury's recollection of the evidence which controls. Defense counsel complained that the viewing seems unfair in that the jury would see the racks in a different location, but the court reiterated that the jury knows the testimony with respect to the location of these items and whether they might impede the view. Defense counsel again urged this objection, but the court adopted the commonsense observation by the prosecutor that it would probably be impossible to put the racks in the exact location they were at the time of the crime. Thus, the trial court reiterated its denial of defense counsel's request for either supplemental charge to the jury instructing them that the crime scene was changed, or to restore the crime scene to as close an approximation as possible to its appearance at the time of the crime. Despite this denial, defense counsel consented to the viewing.

CPL 270.50 (subd 1) provides: "When *the court is of the opinion* that a viewing or observation by the jury of the premises or place where an offense on trial was allegedly committed, or of any other premises or place involved in the case, will be helpful to the jury in determining any material factual issue, *it may in its discretion,* at *any time before the commencement of the summations,* order that the jury be conducted to such premises or place for such purpose in accordance with the provisions of this section" (emphasis supplied). It should immediately be noted that this statute controls a trial situation occurring before summations only and that during such period it is the opinion and the discretion of the trial court which controls. There is no specific proscription in the statute of a jury's visiting a crime scene after summations other than by implication. In *People v Landers* (264 NY 119, 123), the Court of Appeals in discussing section 411 of the Code of Criminal Procedure, which is the statute from which the present statute (CPL 270.50) is derived, observed: "View of premises, when ordered and how conducted, is governed by Code of Criminal Procedure, section 411. It is argued from the location of this section in the Code in title VII, chapter 1, entitled 'The Trial', that a view may be ordered *only during the trial,* after the jury has been impaneled and that the trial ends when the case is submitted to the jury. *The power of the court is not so limited, at least when*

*the parties consent"* (emphasis supplied). *People v Landers* is based in part on the principle that "[t]he view is not a part of the trial," citing *People v Thorn* (156 NY 286). *People v Thorn (supra)* utilized as support for this proposition, the fact that the Code of Criminal Procedure did not then "require a judge to attend upon the jury during the time that it is inspecting the premises." Of course, the present statute does require the attendance of the court itself and thus it may well be urged that the view is a part of the trial. This does not detract, however, from the continued viability of the *Landers'* court's statement that the power of the court to order viewing is not limited to a presummation period when the parties consent. The *Landers'* court recognized that "[t]he trial in common parlance may extend from arraignment to verdict and sentence" *(People v Landers, supra,* p 123).

Accordingly, we initially hold that there is a residuum of power in the trial court to permit a jury, after summations, to view the scene of a crime upon the jury's request to obtain such view, provided the parties, i.e., the People and the defendant, consent. Of course, the proper exercise of this power rests with the sound discretion of the trial court when it is of the opinion that such viewing will be helpful to the jury. We are prompted to this conclusion by the historical underpinnings of the statutes authorizing viewing to the effect that they "were evidently designed by the legislature *to aid the jury* in arriving at a correct result. It is a well-understood fact that an individual familiar with the locality can better and more accurately understand the testimony of the witnesses describing scenes occurring therein than a stranger who is dependent entirely upon the description given by the witnesses. *A criminal trial is to ascertain the facts,* and every act of the legislature designed to aid the jury in this direction should receive a liberal and reasonable interpretation to the end that this purpose may be accomplished" *(People v Thorn, supra,* p 296; emphasis supplied).

The facts which the fact finder is asked to resolve are presented by the parties to the criminal litigation, respectively, the People and the defendant. In other words, the version of reality upon which the fact finder is required to operate in order to ascertain truth is filtered by the competing interests of society—the People, on the one hand, and the defendant on the other. Accordingly, if the parties themselves, whose respective and competing interests are at stake, consent

that the jury be permitted to ascertain the facts by an actual view of the scene of the crime, the mere fact that this occurs after summations should not serve of itself to frustrate this laudable goal.

Prior to summations, the consent of the parties is not required because the court is vested by virtue of the explicit terms of the statute (CPL 270.50) with the power to direct a viewing. However, after summations, the power of the court to direct a viewing derives not from the legislative will as expressed in the statute, but from the will of the parties themselves who have a perceived vital interest in aiding the jury's endeavor to properly ascertain the facts and arrive at truth.* Clearly, the statutory guidelines governing the manner of the viewing by the jury serve equally well whether the viewing be held prior to or after summations.

Although we have determined that the trial court had the authority under the circumstances herein to direct a postsummation viewing by the jury, we must now determine whether it properly exercised its discretion in utilizing such power. Clearly the trial court was aware that the premises in which the crime occurred, had changed to some degree since the crime. The change apparently consisted of the moving of two transitory racks in the grocery store—a potato chip rack and a hosiery rack. Of course, not every change in a crime scene will operate to frustrate an otherwise warranted viewing of the crime scene by a jury. The change to constitute an impediment to a proper viewing must be of sufficient significance that it may be regarded as a substantial change under the relevant circumstances. A significant change may be based upon a quantitative analysis, that is, the existence of a number of minor changes sufficient to warrant the reasoned conclusion that while individually they do not amount to a substantial change, considered collectively they do constitute

---

* It is noted in Richardson, Evidence (10th ed, § 139): "As noted earlier, present section 270.50 authorizes a jury view 'at any time before the commencement of the summations'. Presumably, even under the Criminal Procedure Law, if the parties consent to it, a jury view may be ordered after the jury commenced its deliberations." See, also, Fisch, Evidence (2d ed, § 147, n 91) wherein it is stated: "Prior to the statute of 4 Anne (1706) c.15, § 8 which provided for a view in civil cases and prior to 6 Geo. IV (1826) c.5, § 23 which authorized a view in criminal cases, at common law the authority to grant a view was not governed by statute. There is authority for the position that at common law the court was without power to grant a view without the *consent of the parties. Rex v. Redman,* Sayer 303, 1 Ld. Kenyon, 384, 98 Eng. Rep. 888, 1029 (1756)" (emphasis supplied).

such a change. Further, a significant change may be based upon a qualitative analysis, that is, the existence of a change or changes which while very few or few in number are of such significance, under the relevant circumstances, as to impel the reasoned conclusion that they constitute a significant change. It is clear from the record herein that defense counsel—indeed, even the prosecutor—viewed the moving of the racks as very significant relative to the jury's consideration, assuming they were permitted to view the crime scene, of the eyewitness identification by the brother of one of the owners.

Common sense dictates that the jury in informing the court of the confusion of half their complement regarding the layout of the grocery store and requesting permission to view the store premises while in the midst of their deliberation, were indicating that the layout of the store had entered into the deliberative process to an extent that might well be critical. Of course, we could speculate that the layout of the store was not critical, but this would be an idle and impermissible gesture in a criminal trial where the proof of guilt must be beyond a reasonable doubt and where the jury by virtue of its own action has at least indicated *sua sponte* that a viewing of the crime scene would be of aid in arriving at the truth. It suffices to state at this point that the jury's actions indicate to a reasonable extent that the jury was not of a mind that the layout of the store was an insignificant factor.

Respecting the eyewitness identification testimony, it is clear on this record that the layout of the store is or could well be a significant factor in determining the reliability of the brother's testimony, albeit it would not be a critical factor in determining the reliability of the owner's (sister) identification. Therefore, absent agreement between the parties to have the transitory items—the two racks—moved back to the exact location or as near an approximation as possible that they occupied at the time of the crime, it is clear that a qualitative substantial change was involved and that a viewing of the premises under such circumstances might only not be helpful, but might well be harmful. It was an abuse of discretion by the trial court on this record to permit the viewing of the crime scene by the jury.

This conclusion is further buttressed by the events which occurred in court subsequent to the jury's viewing. Defense counsel, having been present while the jury was viewing the crime scene, stated to the court that their impression was that

the jury could not get a fair and just view so as to reconstruct in their minds what occurred on the night of the robbery without the transitory racks being put back in their original location. The prosecutor, in an endeavor to palliate the force of defense counsel's statement, declared his belief that juror No. 9 "did move the rack of the potato chips from the wall to the middle of the aisle," only to be corrected by defense counsel that it was the hosiery rack which the juror moved. The moving of one of the racks by a juror did not obviate the trial court's error in permitting the jury to view a crime scene which had changed in a substantial respect since the crime, but compounded same. The purpose of an inspection of the crime scene by the jury is solely to permit visual inspection by the jury, not alteration by a juror however well intentioned (cf. CPL 270.50). Noting that the bulkiest and most obstructing rack, the potato chip rack, was not moved, defense counsel pressed his point by asserting that it was clear that the jury was interested in the identification testimony of the brother, because they all went behind the glass meat refrigerator to see the store from that vantage point. The trial court refused defendant's renewed request for at least supplemental instructions that the premises had been changed since the crime.

Obviously, the exercise of discretion in permitting the viewing of a crime scene is to be carefully considered by a trial court. Before summation the viewing leaves open to the parties the opportunity to communicate to the jury at least, via summation, some appropriate reflection of their respective positions regarding the layout of the crime scene in light of actual viewing by the jury. This is not the case when viewing is permitted on consent of the parties after summation. If anything, the exercise of discretion in deciding whether to permit viewing must be more delicately reflected upon by the trial court after summation. The instant appeal is an apt illustration of this salient reality.

Finally, although the exercise of discretion in permitting viewing herein is an abuse of discretion and an error, it may be argued that such error is nonprejudicial in view of the overwhelming proof of guilt. This argument is met by the observation that the error occurred during the deliberative process itself and arose out of that deliberative process. Apart from mere speculation, it is impossible for members of an appellate court to determine to what extent the error permeated that deliberative process. Accordingly, in the context

of the procedural and substantive safeguards guaranteeing to a defendant in a criminal matter a fair trial, it suffices to state that a reasonable doubt of a tainted jury deliberation arising from postsummation viewing by the jury of a substantially changed crime scene is sufficient to mandate reversal of the judgment of conviction and affording the defendant a new trial.

The judgment of the Supreme Court, New York County (W. SHEA, J.), rendered December 16, 1976, convicting defendant, after a jury trial, of robbery in the second degree, should be reversed, on the law, and the matter remanded for a new trial.

SILVERMAN, J. (dissenting). I would affirm the judgment appealed from.

There was no error in complying with the jury's request to permit the jury to view the scene of the crime during deliberations as this was expressly consented to by both sides. Although CPL 270.50 authorizes the court to permit a viewing "at any time before the commencement of the summations," this restriction like so many other restrictions in the statute can be waived, and here is was explicitly waived.

Although appellant contends that no viewing should have been allowed at all during deliberations despite the consent, it is also argued that the Judge should have given a supplemental instruction to the jury pointing out that the scene was slightly different (presumably as to physical placement of certain racks) from what it had been at the time of the crime. While I would see no harm in the Trial Judge giving such an instruction, I do not think the failure to give such an instruction was error, let alone reversible error. At the time that counsel consented to the viewing, counsel knew that the viewing was to be without a supplemental instruction. If counsel was not satisfied, all he had to do was not to consent to the viewing on those terms. Further, it is a common and very sensible practice of Trial Judges, once deliberations have begun, not to interfere with jury deliberations by volunteering further instructions to the jury, except in direct response to the jury's request for such instructions. In the present case, the instruction that the scene might be somewhat different would in a certain sense have been a comment on the evidence volunteered during deliberations. Furthermore, the testimony that the jury had heard made it quite clear that the racks were not in their usual position at the time of the

robbery but had been temporarily pulled out of their usual position for restocking. And it is quite plain not only that the jury heard this testimony, but that it was aware of it at the time of the inspection, for during the inspection one of the jurors moved one of the racks out.

Finally, this claim of error does not seem to me to be of sufficient importance to warrant reversing this two and one-half-year-old conviction of a crime that took place over three years ago, in a case where evidence of guilt is strong.

KUPFERMAN, J. P., LANE and LYNCH, JJ., concur with LUPIANO, J.; SILVERMAN, J., dissents in an opinion.

Judgment, Supreme Court, New York County, rendered on December 16, 1976, reversed, on the law, and the matter remanded for a new trial.