THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
MARK McCURDY, Appellant.

Second Department, May 24, 1982

**APPEARANCES OF COUNSEL**

*Rappaport & Frost (Freda S. Nisnewitz* of counsel), for
appellant.

*Elizabeth Holtzman, District Attorney (Jane S. Meyers* of
counsel), for respondent.

*Per Curiam.*

Defendant, a police officer, was accused of shooting Alexander Bradford in the hallway outside the former's apartment. The two had been friends since childhood. In 1972 they formed a music business together in Kings County. Although the business was successful at its inception, problems developed as it began to run into debt. In June, 1976, defendant accused Alexander Bradford, and members of Mr. Bradford's family who had worked in the store, of mismanagement. This created difficulties in the relationship between the partners, and in mid-1976 the business closed. Defendant and Bradford had no further contact until several days before the shooting.

Bradford testified that at 6:30 P.M. on Sunday, March 13, 1977, the day of the shooting, he went jogging. He decided to drop by and see defendant in order to try to patch things up. Upon arriving at the brownstone in which defendant lived, Bradford entered the vestibule and rang defendant's bell. The vestibule door was locked. After a few minutes, Bradford, looking through the glass pane in the door, saw defendant outside his apartment on the second floor. They looked at each other, and then defendant returned to his apartment.

Bradford then engaged in some conversation with a woman on the street. Defendant came out of the building, whereupon Bradford asked if they could speak with each other. The two entered the building and a conversation ensued on the stairs leading to the second floor.

The conversation lasted about 10 minutes, during which time the defendant moved up the stairway about 15 feet from Bradford and said "I am going to do it, and I'm going to do it now". Defendant moved his hand to his rear hip pocket, but removed nothing. He then placed his hand into his jacket and withdrew a revolver. Bradford turned to leave. He opened the vestibule door, his back to defendant. Suddenly he felt his head "explode * * * like a firecracker" and his face hit the floor.

Defendant testified that he was on his way to work when the incident occurred. He did not hear the doorbell, nor did

he see Bradford until he got to the bottom of the stairs while he was on his way out. He claimed that it was, in fact, impossible for a person standing in the vestibule area to see an individual standing on the second floor landing, and vice versa.

When defendant reached the vestibule door, Bradford pushed it open and came into the building. Bradford demanded money. Defendant then saw a revolver in Bradford's hand; a struggle ensued, and shots were fired. During the struggle, defendant was able to get his own revolver out and fire it. Bradford went down. Defendant picked up Bradford's gun and went upstairs to call the police. When the police came, he turned the gun over.

At trial, the credibility of the witnesses was a paramount issue. The People's theory was that the gun that defendant turned over to the police was in fact his; defendant maintained that he had never seen that weapon before. Both sides presented additional evidence, which need not be recited here, in support of their respective claims.

After the defense rested, the court allowed the jury, over defendant's objection, to visit the crime scene. The prosecutor requested the visit in order to enable the jury to determine whether anyone standing on the second floor landing could be seen through the closed vestibule door, and vice versa. Defense counsel strenuously objected on the ground that structural changes had taken place in the hallway area. In particular, the vestibule door had been replaced by a steel door which had a smaller window in it; the walls had been painted a lighter and different color; the intensity of the illumination in the area had been changed; and a radiator had been removed. The court, in granting the motion, was apparently swayed by the prosecutor's argument that the window in the new vestibule door was completely contained within the area and dimensions of the glass in the prior door.

■ We are of the opinion that the court abused its discretion in allowing the jury to view the premises. Such a viewing by a jury in a criminal trial is governed by CPL 270.50 (subd 1) of which provides: "When the court is of the opinion that a viewing or observation by the jury of the

premises or place where an offense on trial was allegedly committed, or of any other premises or place involved in the case, will be helpful to the jury in determining any material factual issue, it may in its discretion, at any time before the commencement of the summations, order that the jury be conducted to such premises or place for such purpose in accordance with the provisions of this section." The alleged purpose for the visit in question was to determine if a person standing in the vestibule could see an individual standing on the second floor landing. Assuming, without deciding, that this was a "material factual issue", the fact remains that the hallway and vestibule door were not in substantially the same condition as they were on the date of the incident. Photographs will not be admitted into evidence if the scene they depict has substantially changed between the time of the incident and the time the photographs are taken (*Dugan v Dieber,* 32 AD2d 815). The same principle applies, with perhaps even greater force, to a jury visit in a criminal trial (*People v Thorn,* 156 NY 286, 298-299; *People v White,* 67 AD2d 571, revd on other grounds 53 NY2d 721). While it is within the trial court's discretion to permit such an event, it is imperative that the potential of prejudice be avoided by the trial court's insuring that the scene has not significantly changed in any relevant respect.

The conclusion that a crime scene has undergone a substantial change may be reached either upon a quantitative or a qualitative analysis. Thus, the scene may have undergone a number of small changes which collectively prove significant, or, on the other hand, while there may have been relatively few changes, they may have been "of such significance, under the relevant circumstances, as to impel the reasoned conclusion that they constitute a significant change" (*People v White,* 67 AD2d 571, 576, *supra*). At bar, we are persuaded that applying either analysis, the scene had substantially changed between the time of the crime and the time of the jury view. The incident occurred early on a rainy morning in March, 1977. The visit to the scene occurred after 9:00 A.M. in May, a little more than three years later. The walls had been painted a different, lighter color and the Trial Judge, in his comments to the

jury while at the scene, stated that he did not know "what lighting they had on the day in question." Additionally, the installation of a new vestibule door, with a smaller window, constituted a significant alteration which could have affected an accurate determination of visibility. Even if there had been no alteration in the door, a visit would have had questionable value. The jurors presumably varied in height, both with respect to each other and with respect to defendant and Bradford. The possible angles of vision render evaluation and comparison problematic at best. Obviously, given these changes, what was capable of being seen or not seen on the day and at the time of the incident could not be determined by a jury visit without creating a strong possibility of prejudice, and it cannot be said that permitting the visit constituted harmless error. Accordingly, we reverse.

■ A new trial is also required in the interest of justice. The court instructed the jury, as requested by defendant, on those provisions of the Penal Law dealing with the justifiable use of deadly physical force (1) by a person acting to repel the imminent use of deadly physical force against himself (Penal Law, § 35.15, subds 1, 2, par [a]), and (2) by a police officer in the course of effecting an arrest (Penal Law, § 35.30). On the evidence, the jury may have concluded that defendant had not acted in his capacity as a police officer, in which case it could be inferred from the charge that defendant had a duty to retreat under the circumstances. This was error. It has long been the law of this State that a person attacked in his dwelling has no duty to retreat (Penal Law, § 35.15, subd 2, par [a], cl [i]; *People v Tomlins,* 213 NY 240). We are of the view that the hallway outside of defendant's apartment was part of his dwelling under the particular facts of this case.

The word "dwelling" as used in subdivision 2 of section 35.15 of the Penal Law is not defined in that statute. While porches or other similar structures may be deemed to be part of one's dwelling (*State v Bonano,* 59 NJ 515; cf. *People v Wicker,* 78 Misc 2d 811, 813), hallways are more problematic in that they are often of a public nature (see *People v Powell,* 54 NY2d 524). In this case the hallway was located in a brownstone. Access to the hallway was limited to

residents of the building and their guests. A locked front door insured this security. The incident itself took place at the foot of the stairs leading to the apartment. The degree of privacy of the brownstone and its hallway compels us to conclude that the jury should have been told that defendant had no duty to retreat, if he reasonably believed that Bradford was using, or was about to use, deadly physical force (see *Commonwealth v Daniels,* 451 Pa 163).

Since defendant is entitled to a new trial, we need not address his claim of jury misconduct. However, because of the seriousness of this claim, we consider it appropriate to comment thereon.

Deliberations lasted some two and a half days. At about 6:05 P.M. on the third day, it came to the court's attention that during deliberations defense counsel had seen one of the jurors making a telephone call. During the court's brief inquiry, the juror in question testified that he had telephoned his wife but did not speak to her about the trial. The court officer in charge testified that he had permitted the call to be made because the juror appeared extremely nervous and upset. Another court officer was stationed outside the telephone booth when the juror made the call. The court determined that the juror's actions did not affect the proper function of the jury and were not prejudicial to either side. At 7:00 P.M. the jury reached a verdict.

Prior to sentencing, defendant moved for a full hearing regarding the events surrounding the telephone call. An affidavit of a newspaper reporter, who observed the juror in the telephone booth, raised the possibility that the juror may have made more than one telephone call immediately preceding the verdict. The denial of this motion was error.

A juror may not, without judicial authorization, speak to nonjurors during deliberations (CPL 310.10). The brief inquiry made by the court, before the verdict was reached, was insufficient. The court should have identified the person or persons communicated with, and the subject matter of the telephone conversation or conversations. In addition, it may have been appropriate to inquire of the other jurors as to their knowledge of the events in question. On the limited testimony taken, the court could not prop-

erly determine whether there was misconduct, and if there was, whether it was likely to have had a prejudicial effect on the deliberation process. Accordingly, a full hearing should have been held (see *People v Ciaccio,* 47 NY2d 431, 437; cf. *People v Brown,* 48 NY2d 388, 394).

We have considered defendant's remaining contentions on appeal, and find them to be without merit.

TITONE, J. P., MANGANO, BRACKEN and BOYERS, JJ., concur.

Judgment of the Supreme Court, Kings County, rendered June 27, 1980, reversed, on the law and as a matter of discretion in the interest of justice, and new trial ordered.