OPINION OF THE COURT
Alain M. Bourgeois, J.
The defendant has been convicted, after a jury trial, of attempted sodomy in the first degree and rape in the first degree. The defense now seeks to set aside the verdict, pursuant to CPL 330.30 (subd 2), on the grounds that a copy of the defendant’s arrest report containing information which had been ordered redacted by the court was inadvertently viewed by the jury during their deliberations. Defendant contends that the jury’s view of this unredacted exhibit so affected his substantial rights as to fatally taint the jury’s determination of guilt herein.
Based on the trial testimony, the facts surrounding the commission of the crime were as follows:
On the morning of May 23, 1981, the complaining witness was crossing a schoolyard at Legion and Blake Avenues, Brooklyn, returning home from visiting her mother at a local hospital. Midway through the schoolyard, she *761 was confronted by the defendant, who stated that he had a gun. He forced her to cross the schoolyard and the adjacent street and enter into an abandoned building where he raped her and attempted the crime of sodomy.
Some 10 days after the crime, complainant saw the defendant again. By the time she succeeded in summoning the police, however, the defendant had disappeared.
On June 17, 1981, the complainant once again observed the defendant in the schoolyard and again notified the police. Police Officer Lupis and Detective Glover responded to the scene. Upon their arrival, complainant pointed to the defendant and identified him as her attacker. There were approximately 20 other people in the schoolyard at this time. Defendant was placed under arrest.
At trial, defendant sought the introduction into evidence of the arrest report prepared by Police Officer Lupis. This document, completed by the arresting officer on the basis of his own observations as well as the defendant’s responses to pedigree questions, contained written information as to the defendant’s physical appearance that counsel wished the jury to compare with the complainant’s description of her assailant given on the date of the incident.
The People opposed the admission into evidence of the arrest report, seeking redaction of certain “self-serving” portions thereof. The defendant countered by consenting to the redactions sought by the People and by proposing the additional redaction of the word “unemployed” from that portion of the document calling for the defendant’s employment status.
The afore-mentioned redactions were consented to by the parties and accepted by the court and the arrest report was, as redacted, received in evidence.
On January 15, 1983, after deliberations that extended over three days, the jury found the defendant guilty of rape in the first degree and attempted sodomy in the first degree.
Subsequent to the rendition of the verdict, through conversations with the jurors, counsel for both sides learned that, at one point in their deliberations, the jury had viewed a copy of the arrest report from which the word *762 “unemployed” had, in error, not been redacted. They had also, in further deliberations, seen the properly redacted exhibit.
Following the filing of the instant motion, counsel for both sides stipulated to the fact that the jury had viewed a copy of the arrest report containing the word “unemployed” as well as the properly redacted exhibit and that the discrepancy between the two was discussed by the jury. The facts having thus been resolved, defendant requested that the court hold a hearing to determine if the above-mentioned incident influenced the jury’s verdict, thereby affecting his substantial rights.
CONCLUSIONS OF LAW
Defendant’s request for a hearing must be viewed in light of the afore-mentioned stipulation.
On a motion to set aside a verdict, where the court cannot make a determination based on the moving papers, it must conduct a “fact-finding” hearing (CPL 330.40, subd 2, par [f]). Such a hearing is necessary where the facts underlying the application are either unknown or uncertain, its purpose being “to inquire into the truth of the factual averments” (People v Ciaccio, 47 NY2d 431, 437; see, also, People v Brown, 48 NY2d 388; People v McCurdy, 86 AD2d 493; People v Cadby, 75 AD2d 713; People v Jacobson, 109 Misc 2d 204).
As the facts surrounding the afore-mentioned incident have been determined by stipulation, the court denies defendant’s request for a hearing, finding that no permissible purpose would be served thereby.
Defendant argues that, while the facts of the incident in question are known to the court, an inquiry of the individual jurors concerning their mental process in arriving at their verdict is nonetheless necessary in order to determine whether defendant was prejudiced by their view of the unredacted document.
The court has carefully reviewed both State and Federal law on point and has been unable to find any authority permitting such inquiry.
Founded on public policy concerns, the general rule, dating back to 1785, is that jurors may not impeach their *763 own verdict (Stein v New York, 346 US 156, 178; McDonald v Pless, 238 US 264; Mattox v United States, 146 US 140, 147-151; Vaise v Delaval, 1 TR 11 [KB, 1785]; 8 Wigmore, Evidence, §§ 2349, 2352-2354 [McNaughton rev ed, 1961]).
Both the State and Federal courts have recognized an exception to this rule in cases involving the introduction of extraneous material before the jury (Stein v New York, supra; Mattox v United States, supra; People v Ciaccio, supra; People v Brown, supra; People v McCurdy, supra; People v Cadby, supra; People v De Lucia, 20 NY2d 275).
The court believes, however, that the inquiry requested by defendant would go beyond the permissible scope of this exception.[1]
In People v Brown (48 NY2d 388, supra), the Court of Appeals applied the exception in a case involving juror misconduct. In Brown, the defendant was accused of being the driver of a car used to escape from the scene of a robbery. Essential to the People’s case was the testimony of a police officer who stated that at the time of the incident he was able to see the defendant’s face in the get away car from his vantage point in a police van. To determine the credibility of this testimony one of the jurors conducted a “test” in her own van. She found the officer’s testimony to be credible and reported her findings to the jury during deliberations.
In Brown (supra), the court conducted a hearing in order to determine the factual circumstances of the juror’s “test”. However, in deciding the question of whether the juror’s behavior was prejudicial to the defendant the court did not make an inquiry into the mental processes of the jury in arriving at their verdict, but rather analyzed the juror’s conduct, ruling, as a matter Of law, that such conduct was prejudicial to the defendant and may have affected his substantial rights. In its analysis, the court considered whether the “test” conducted by the juror was improper and whether it Rad bearing on an issue which was material in the case. The court found that the “test” created a substantial risk of prejudice to the defendant as the wit *764 ness’ identification testimony was the only direct link to the defendant in the People’s case and the witness’ credibility was at issue.
In People v McCurdy (86 AD2d 493, supra), the court applied the exception in a case involving misconduct on the part of a juror who allegedly made telephone calls to outside individuals while the jury was deliberating. In that case an affidavit was submitted by a newspaper reporter who viewed the juror in a telephone booth during deliberations. Faced with unresolved questions as to the circumstances surrounding the phone calls and their propriety, the court directed a hearing solely to determine the objective facts.
To like effect is People v Cadby (75 AD2d 713, supra), involving allegations of an ex parte communication between a court officer and the jury during deliberations. As the appellate court was unable to determine, from the record, the “facts and circumstances relating to the claimed ex parte communication”, the court ordered that a hearing be held “to inquire into the truth of the factual averments” (supra, at p 714).
Defendant cites the case of People v Whitmore (45 Misc 2d 506, revd on other grounds 27 AD2d 939) for the proposition that the court may inquire into the deliberative mental processes of the jury upon allegations of juror misconduct. Defendant’s reliance is misplaced. In Whit-more {supra), the court, faced with allegations of racial prejudice on the part of the jury, permitted an inquiry into the jurors’ mental processes only for the purpose of establishing the competence of the panel itself. The court was painstaking in pointing out that this line of inquiry was permissible during the voir dire and had bearing on the validity of the jurors’ oath. The inquiry did not concern the jury’s deliberative mental process in rendering their verdict. Accordingly, this court does not believe that the inquiry permitted in Whitmore is in any way relevant to the issue now before the court.
Thus, upon an allegation that extraneous material was brought to bear upon the jury’s deliberations, New York precedent holds that the issue of prejudice to the defendant *765 be decided without inquiry into the mental processes of the jury, but rather through an analysis of the factual circumstances surrounding the incident (People v Ciaccio, 47 NY2d 431, supra; People v De Lucia, 20 NY2d 275, supra; People v McCurdy, 86 AD2d 493, supra; People v Cadby, 75 AD2d 713, supra; People v Jacobson, 109 Misc 2d 204, supra; CPL 330.40, subd 2, par [f]; see, contra, People v DeGiovanni, NYU, March 9, 1983, p 16, col 4).
Federal law upon the subject is also instructive. Subdivision (b) of rule 606 of the Federal Rules of Evidence (US Code, tit 28) specifically provides that upon a motion to set aside the verdict on the above-mentioned grounds the jury may testify as to whether such material was brought to their attention but may not testify as to their deliberative mental processes. The Federal rule does not seek to establish the grounds upon which a verdict may be set aside, but rather “deals only with the competency of jurors to testify concerning those grounds.” (Notes of Advisory Committee on Proposed Rules, Fed Rules Evid, rule 606, subd [b], US Code Ann., p 249.)
In commenting on this issue the following has been stated: “The trend has been to draw the dividing line between testimony as to mental processes, on the one hand, and as to the existence of conditions or occurrences of events calculated improperly to influence the verdict on the other hand * * * Allowing them [the jury] to testify as to matters other than their own reactions involves no particular hazards to the values sought to be protected.” (Notes of Committee on Judiciary, House Report No. 93-650, Commentary on Fed Rules Evid, rule 606, subd [b], US Code Ann., pp 249-250.)
The American Bar Association’s Project on Minimum Standards for Criminal Justice (1974) Trial by Jury contains a similar provision: “Upon an inquiry into the validity of a verdict, no evidence shall be received to show the effect of any statement, conduct or condition upon the mind of a juror or concerning the mental process by which the verdict was determined.” (§ 5.7 [a].)
This section also specifically provides, in contrast, that a juror may testify, or submit affidavits concerning the facts and circumstances surrounding the allegation that an im *766 proper influence was brought to bear upon the jury (§ 5.7 [c]).[2]
Defendant’s request for a hearing on the motion is, therefore, denied. The facts of the incident having been established by stipulation, the court finds that no legitimate purpose could be served in the conducting of a hearing herein.
Additionally, defendant’s motion to set aside the verdict is denied.
In the resolution of a motion to set aside a verdict grounded in the jury’s viewing of exhibits not received in evidence “[i]n each case the facts must be examined to determine the nature of the material placed before the jury and the likelihood that prejudice would be engendered” (People v Brown, 48 NY2d 388, 394, supra).
In People v Bouton (50 NY2d 130), defendant was convicted of sodomy and sexual abuse. During the course of their deliberations the jury viewed exhibits not admitted in evidence including “two versions of defendant’s confessions from which reference to uncharged sexual activity had not been redacted * * * hearsay laden psychiatric medical records of the statutory rape complainant and welfare records of her mother.” (Supra, p 137.) In view of the prejudicial nature of this material, the court held that the error could not be excused as harmless and a new trial was ordered.
In the court’s view, the prejudicial impact, as well as the relevance, of the exhibits viewed by the jury in Bouton differs significantly from the nature of the exhibit viewed by the jury in the instant matter.
As the employment status of the defendant was wholly collateral to the issues to be proven at trial, the court believes that the jury’s view of the unredacted arrest report containing the word “unemployed” was harmless beyond a reasonable doubt (Chapman v California, 386 US 18, reh den 386 US 987; People v Phillips, 87 Misc 2d 613, affd 52 AD2d 758, mot for lv to app den 39 NY2d 949, writ habeas *767 corpus granted 485 F Supp 1365, affd Phillips v Smith, 632 F2d 1019, revd 455 US 209).
Accordingly, defendant’s motion is denied.

. For discussion on the evolution of this exception see O’Connor, Jury Impeachment of Verdicts in New York, NYLJ, Feb. 29, 1980, p 1, cols 2-4, p 4, cols 1-2.

. For further discussion of this distinction see Pope, The Mental Operations of Jurors, 40 Texas L Rev 849.