OPINION OF THE COURT
Jerome M. Kay, J.
Does court reporter error during a readback of testimony to the jury present sufficient grounds for setting aside a verdict? An answer to this question is one of apparent first impression and is the subject of this decision.
The defendant was convicted of criminal sale of a controlled substance in the third degree, criminal possession of a controlled substance in the third degree and criminal possession of a controlled substance in the seventh degree.
At the trial it was shown that on June 2, 1982, the defendant sold a quantity of heroin to Police Officer Melvin Bayne, an undercover officer. Police records set forth a description given by Officer Bayne of the appearance of the defendant at the time of the sale. The defense then attempted to bring out discrepancies between the description and the actual appearance of the defendant at the time of the sale. One of the key discrepancies was the defendant’s missing front teeth and the lack of reference to teeth in any *1086 description. Both counsel argued this point in their summations.
The relevant portion of the minutes of the cross-examination of Officer Melvin Bayne read as follows:
“Q Now, I ask you, does Mr. Aikens look essentially the same now as he did on June 2nd?
“A Essentially the same with the exception of his feet.” (Emphasis added.)
■ The jury requested this testimony be read back and a verdict was rendered. Following the reading of the verdict and discharge of the jury, with the court’s permission both counsel entered the jury room to speak to the jury members. At this point the error in the readback was noted by defendant’s counsel. Subsequently a motion under CPL 330.30 to set aside the verdict was made.
It has been stipulated between the parties that the word “feet” was misread to the jury and the word “teeth” was substituted. The word “feet” is the correct rendition of the testimony at the trial.
CONCLUSIONS OF LAW
Both parties have stipulated as to the facts surrounding the afore-mentioned incident. Therefore, there is no necessity for a hearing under CPL 330.40 (subd 2, par [f]).
The Court of Appeals has said that upon an allegation that extraneous material was brought to bear upon the jury’s deliberation, the issue of prejudice to the defendant must be decided without an inquiry into the mental processes of the jury, but rather, through an analysis of the factual circumstances surrounding the incident (People v Ciaccio, 47 NY2d 431).
CPL 310.30 permits a jury to request information or to pose inquiries and requires the court to give the jury such requested information and instruction as the court deems proper. Failure to answer or to answer incorrectly is reversible error if there is prejudice to the defendant (People v Jackson, 20 NY2d 440, cert den 391 US 928; People v Miller, 6 NY2d 152).
What constitutes prejudice to the defendant? In People v Bouton (50 NY2d 130), the defendant was convicted of sodomy and sexual abuse. During the course of their delib *1087 erations, the jury viewed “two versions of defendant’s confessions from which reference to uncharged sexual activity had not been redacted * * * hearsay laden psychiatric medical records of the statutory rape complainant and welfare records of her mother” (p 137). The Court of Appeals in Bouton (supra) found this material prejudicial and a new trial was ordered.
A contrary result was reached by the court in People v Hooker (118 Misc 2d 760) where the jury viewed an arrest report from which the word “unemployed” had mistakenly not been redacted. The court in Hooker found the employment status of the defendant to be wholly collateral and the subsequent viewing by the jury to be “harmless beyond a reasonable doubt” (p 766).
The factual situation at bar is not analogous to Hooker (supra) for the incorrect testimony placed before the jury was highly relevant. A reading of the record shows that the physical description of the defendant was a material point of issue in this one-witness identification case. Clearly, the erroneous readback was substantially prejudicial to the defendant.
Judge Fuchsberg in Bouton (supra, p 137) stated: “In our view this error was not harmless. Though the jurors by then may already have formed tentative opinions, because it was their privilege to change their minds until the verdict had been rendered, it is impossible to say whether this possibility was undermined and their inchoate determinations reinforced by the viewing of the judicially excluded matter.” The same may be said in the instant matter.
While the court is prohibited from going into the mental processes of the jury (People v De Lucia, 20 NY2d 275), it must note that the jury indicated they had reached a verdict minutes after the readback in question, although we may not speculate as to the reasons for their verdict (People v Diaz-Rosa, 22 AD2d 755).
A final point that must be addressed by the court is the most troubling. It is the question of waiver. During the course of the three readbacks in this case several objections were made by counsel concerning errors in the readbacks. The court reporter was then instructed to read back the *1088 corrected testimony as stipulated or agreed to by counsel and the court. However, no objection was made to the readback testimony that is the subject of this motion. The People contend (citing no authority) that whether the failure to object was a calculated ploy or a mere oversight, this court must consider it a waiver of objection.
The Court of Appeals in People v Patterson (39 NY2d 288) has held that a failure to object to a charge at the time when the trial court had an opportunity to effectively correct its instructions shall constitute waiver. However, the court has also ruled that no exception is necessary when a deprivation of a fundamental constitutional right is at issue (People v McLucas, 15 NY2d 167). Certainly, in the instant matter a conviction based on crucial testimony that in fact was not given violates the defendant’s right to due process of law.
A waiver of objection must be a knowing waiver. Defense counsel contends he did not hear this error and could not therefore object. Further arguing that if this was a ploy he would have made no objections at all during the other readbacks. This court agrees and holds that there was no waiver. It limits its holding on waiver to the specific facts in this case and is not setting a precedent by this ruling that an attorney at all times can stand mute during the readback and preserve his objections following a verdict.
In summary the improper readback was prejudicial to the defendant’s substantial rights and a new trial is therefore warranted.
The defendant’s motion to set aside the verdict is granted and a new trial is ordered.