■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v NORMA NIEVES, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Queens County (Giaccio, J.), rendered September 12, 1990, convicting her of assault in the second degree and criminal possession of a weapon in the fourth degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is reversed, on the law, and a

new trial is ordered. No questions of fact have been raised or considered.

We agree with the defendant's contention that she is entitled to a new trial as a result of prosecutorial misconduct. The evidence of the defendant's guilt was not overwhelming. The People presented the testimony of the complainant and another eyewitness, both of whom stated that the defendant cut the complainant, her roommate, with a knife, during the course of a dispute over a missing item of the defendant's property. According to the complainant, the defendant boasted that she could kill the complainant and get away with it. The defendant testified that she acted in self-defense of an assault perpetrated against her by the complainant and the other witness, who was a guest of the complainant in the apartment she shared with the defendant.

To discredit the defendant's justification defense, which included testimony that she was not a violent person, the prosecution was permitted, on cross-examination, to inquire about the defendant's alleged history of psychiatric treatments. Although the court precluded inquiry into hospitalizations after the time of the alleged assault, the court did allow inquiry into earlier episodes of treatment for mental illness. In accordance with the court's ruling, the following transpired:

"[THE PROSECUTOR] Q. Before the incident you were never hospitalized for psychiatric problems?

"A. No.

"Q. Isn't it a fact that you have been treated for psychiatric problems since you were 14 years of age?

"[DEFENSE COUNSEL]: Objection.

"THE COURT: Overruled.

"A. When I was 14 years—

"Q. THE COURT: Just answer yes or no.

"A. Yes, because I was derived from a violent household, yes.

"Q. So, when you just said you were treated at a psychiatric hospital for the first time—

"A. For the first time when I was 14 years old.

"Q. You said you were treated for the first time after this incident?

"A. Because I didn't remember until you asked me now. It is something I put in the past.

"[DEFENSE COUNSEL]: Objection, Judge.

"THE COURT: The objection is overruled, Mr. Coakley.

"A. I survived that. Why should I hold on to that?"

The court was of the opinion that this line of inquiry was probative of the defendant's credibility. No instruction was given, however, to inform the jury as to the limited use it could make of this evidence.

After the close of evidence, the prosecutor commented on this matter of the defendant's psychiatric history during her summation:

"You told me that when you sat here that even if you felt a lot of sympathy for somebody, you would base your decision on evidence and not on sympathy. You may feel sorry for these people. That is not why you are here.

"Let me tell you, ladies and gentlemen, when somebody overreacts if you are having an argument and takes the knife and stabs you, that is serious, particularly when that person takes that knife—

"[DEFENSE COUNSEL]: Objection. She is trying to inflame the jury. It is an inappropriate comment on summation.

"THE COURT: Objection overruled.

"[THE PROSECUTOR]: takes that knife and puts it to her chest, yes, I am going to kill you, and I am going to get away with it. Of course she thought she is going to get away. She has a psychological disturbance.

"[DEFENSE COUNSEL]: Objection as to that reference.

"THE COURT: Overruled.

"[DEFENSE COUNSEL]: I move for a mistrial on that issue, Judge.

"THE COURT: That motion is denied.

"[THE PROSECUTOR]: Then I asked the defendant I [sic] had you ever been treated for psychiatric problems before. She said yes, but only after the incident. I went to Bellevue. She told you on direct examination that she was homeless for two years. In fact, she was in the hospital for a while. And then I said isn't it a fact, Miss Nieves, that you have been treated for psychiatric problems since you were 14. Then she said yes.

"If you listen very closely to her testimony and the answers she gave on my cross and on her direct, you are going to realize that she is, the defendant—

"[DEFENSE COUNSEL]: I can't hear.

"[THE PROSECUTOR]: She sat in this chair. And when [defense counsel] did his direct with her, she started crying and she was upset because it was such a traumatic incident. When I

started asking her questions, she wasn't crying. She turns those tears on and off, however it is going to suit you, because she knows you are going to feel sorry for her. A manipulator, ladies and gentlemen, cries for you—

"[DEFENSE COUNSEL]: Objection.

"THE COURT: Overruled.

"[THE PROSECUTOR]: Cries—

"[DEFENSE COUNSEL]: She is commenting on stuff that is not in evidence.

"[THE PROSECUTOR]: It is the demeanor of the witness.

"THE COURT: Your objection is overruled."

The court denied the defendant's motion for a mistrial following the People's summation.

The court's failure to sustain the defendant's objections to this line of questioning was erroneous because the record did not supply a reason to believe that the defendant has or had a psychiatric history or condition that would have any relevance to the defendant's credibility or to the events that formed the basis for the charge. The prosecutor made no offer of proof *in limine* to justify the scope and materiality of this line of inquiry. From the record, we can discern little more than that the defendant had been hospitalized for some undescribed psychiatric problem, at age 14, some 25 years before the alleged crime.

The only purpose served by the prosecution's use of this evidence was to prejudice the jury against the defendant by permitting the inference that she assaulted the complainant with a knife as a result of a psychiatric illness that caused her to act irrationally or violently. Indeed, on summation the prosecutor expressly linked this assault to the defendant's alleged "psychological disturbance". This was inflammatory and improper as there was no evidence that the defendant was suffering from any such disturbance at the time of this assault. Then, after improperly characterizing the defendant as suffering from a psychological disturbance, the prosecutor improperly impugned her credibility by accusing her of being a "manipulator" who was crying for the jury's sympathy.

In light of the less than overwhelming nature of the People's evidence, we cannot call these errors harmless. The defendant's justification defense depended upon a favorable assessment of her credibility. The prosecutor cross-examined her with evidence of psychiatric treatments which in this case was not shown to be analogous to prior vicious, immoral, or criminal acts, and was not in any other way relevant to her

credibility. Thus, the prosecutor was improperly permitted to denigrate the defendant's credibility by portraying her as an unstable individual who resorted to violence because of her psychiatric condition. Moreover, even if this topic were a proper one for cross-examination as probative of the defendant's credibility, the court failed to give the requisite limiting instruction to the jury (see, People v Reger, 13 AD2d 63, 68-69), thereby compounding the prejudice to the defendant. Accordingly, because there was no evidence to link this assault with any alleged psychological disturbance, and because this line of inquiry and the subsequent rhetoric in the People's summation only bolstered this improper line of reasoning, we find that the defendant is entitled to a new trial.

We have considered the defendant's remaining contentions and find them to be without merit. Rosenblatt, Miller and Ritter, JJ., concur.

Thompson, J. P., dissents and votes to affirm the judgment, with the following memorandum: Although I agree with my colleagues that the court improvidently exercised its discretion in permitting the prosecutor to inquire into the defendant's psychiatric history, I nevertheless conclude that, on the record before us, there was no significant probability that had that evidence been excluded, the jury would have acquitted the defendant (see, People v Crimmins, 36 NY2d 230, 236; see also, People v Reddick, 65 NY2d 835; People v Gannaway, 170 AD2d 529). The record reveals that the defendant—who had been living with the complainant—accused the complainant of stealing her property, and then, after a verbal confrontation, attacked the complainant and the complainant's companion with a kitchen knife. Both the complainant and her companion provided consistent, credible accounts of the incident. Moreover, the arresting officer's description of the scene upon his arrival at the complainant's apartment further corroborated the testimony offered by the People's witnesses. While the prosecutor did inquire subsequently into the defendant's psychiatric history, his inquiries were brief and elicited neither specific treatment histories nor the factual incidents underlying the defendant's treatment. Further, the candid and forthright manner in which the defendant described her treatment as the product of a "violent household", which she had now "put in the past", buttressed her credibility and served to dilute the prejudice, if any, which the prosecutor's examination might have produced. In light of the foregoing and considering the strength of the People's case, I conclude that

there was no significant probability that the errors affected the result at bar *(see, People v Crimmins, supra,* at 242).

Furthermore, contrary to the defendant's contention, the court did not commit reversible error by failing to charge that, for purposes of her justification defense, she was under no duty to retreat if she was attacked in her own dwelling *(see,* Penal Law § 35.15 [1], [2]; *People v White,* 127 Misc 2d 219, 222). The defendant's own testimony, the only evidence consistent with a justification defense, did not raise the issue of retreat and the People did not try to negate the defendant's justification defense on any theory that she could have retreated in complete safety. Consequently, there was no significant probability that the jury improperly inferred a duty to retreat in the absence of a charge to the contrary *(cf., People v O'Brien,* 88 AD2d 1001; *People v McCurdy,* 86 AD2d 493, 497-498). It was not error, therefore, to deny the requested charge *(see,* 1 CJI[NY] 35.15 [2] [a], at 871, n).